## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| BERNARD WILLIAMS, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No. 21-cv-00819 |
| | ) | |
| v. | ) | |
| | ) | Hon. Charles P. Kocoras, |
| KRISTON KATO, SAMUEL CIRONE, | ) | District Judge |
| PATRICIA SAWCZENKO, JOHN | ) | |
| FARRELL, SERGEANT CHASEN, M. | ) | |
| CRONIN (Star No. 15490), J. RAWSKI | ) | Hon. Heather K. McShain, |
| (Star No. 3556), SERGEANT J. RISLEY | ) | Magistrate Judge |
| (Star No. 975), UNKNOWN EMPLOYEES | ) | |
| of the CITY OF CHICAGO, and the CITY | ) | |
| OF CHICAGO, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| *Defendants*. | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## THE CITY OF CHICAGO'S MOTION TO BIFURCATE *MONELL* CLAIMS

**INTRODUCTION**

Bernard Williams spent more than two decades in prison for a crime he did not commit. Plaintiff is among dozens of innocent people wrongly convicted due to the work of Chicago Police Department detectives, including Defendant Kato. These wrongful convictions were not isolated incidents of misfortune or rogue "bad acts" but were, instead, part of Chicago's practices. The City now asks the Court to bifurcate Plaintiff's *Monell* claim; a disfavored maneuver that is really an attempt to permanently evade liability. The attempt also seeks to impose needless costs, delay, and will almost certainly spurn even more litigation. As this Court found in denying a nearly identical motion in *Gomez v. Guevara,* a case advancing similar *Monell* claims, avoidance of prejudice and judicial economy weigh against bifurcation. No. 18-cv-03335, Dkt. 56 (N.D. Ill.), Ex. A ("[B]ifurcating *Monell* discovery only tends to prolong the case and leads to unnecessary disputes as to the appropriate scope of non-*Monell* versus *Monell* discovery" and noting that the City is impermissibly aiming "to achieve a *de facto* dismissal of the *Monell* claim by way of bifurcation.").

For at least six reasons, the motion should be denied. First, Plaintiff's *Monell* claims do not depend on whether an individual Defendant is liable. Instead, the City can be found liable—for example, for a practice of suppressing material information—even if the jury were to conclude no individual defendant is responsible. Two recent juries found the City liable for systemically suppressing investigative materials, and the suppression of files in each case was a system-wide problem in file production not necessarily the misconduct of any individual officer. *Rivera v. Guevara*, 12-cv-4428, Dkt. 678 (N.D. Ill. Aug. 3, 2018); *Fields v. Chicago*, 2017 WL 4553411, at *3-*4 (N.D. Ill. Oct. 12, 2017).

Second, bifurcation will not save time or resources. Instead, it would multiply the work of the Court and the parties and inconvenience witnesses. The *Monell* claims will be litigated regardless, and so bifurcation will only serve to duplicate the proceedings. That duplication would be particularly inefficient given much of the evidence is relevant to both the *Monell* claims and individual claims.

1

Third, denying bifurcation will not unfairly prejudice Defendants at trial. Jury instructions are ample protection against any risk of prejudice. On the other hand, granting bifurcation would severely prejudice Plaintiff, and that prejudice must be considered.

Fourth, the City's position violates the Seventh Amendment. The City proposes the Court oversee discovery, decide dispositive motions, oversee a trial against individual Defendants, and then reopen *Monell* discovery, entertain a new round of dispositive motions, and hold a second trial. But those two trials will necessarily require two separate juries to consider the same factual issues—namely, the violation of Williams's constitutional rights and the cause of that violation. The Seventh Amendment forbids that approach.

Fifth, the City offers to accept judgment (while denying wrongdoing) if Williams first establishes liability against an individual Defendant, as if this would moot Plaintiff's claims. The offer is rejected. And, established precedent establishes that a contingent offer to pay cannot moot federal claims. Moreover, the City's proposal is largely redundant of its existing indemnity obligation, but a promise to fulfill that obligation does not insulate a party from federal civil-rights claims.

Finally, there are important non-economic reasons for the *Monell* claims to proceed. The practices at issue have been (and remain) broken. The cost, measured in centuries of life lost, is beyond comprehension. Williams brings suit to spurn meaningful reform. Bifurcation should be denied.

## BACKGROUND

Bernard Williams was 17 years old when he was wrongly convicted of the 1996 murder of Gary Thomas. Dkt. 42 ¶ 1. He was framed by Defendant Kato and his colleagues, who suppressed exculpatory evidence and fabricated evidence—including a false confession Plaintiff never made and witness misidentifications—falsely implicating him in the crime. *Id.* ¶¶ 2-10, 25-46. Defendants suppressed the true circumstances of those false identifications. *Id.* ¶¶ 26-46.

2

Plaintiff's wrongful conviction was also caused by City practices. *Id.* ¶¶ 47-73. These practices include: fabricating confessions; fabricating false statements; and suppressing material information (hidden in the department and never produced to the prosecutors or the defense). *Id.* ¶¶ 47-67. Two recent juries found the City liable for maintaining this practice, including when Plaintiff was prosecuted. *Rivera v. Guevara*, No. 12-cv-4428, Dkt. 678 (N.D. Ill. Aug. 3, 2018); *Fields v. Chicago*, 2017 WL 4553411, at *3-4 (N.D. Ill. Oct. 12, 2017). Finally, the City has failed to train, supervise, investigate, and discipline its officers—like Kato—whose misconduct caused many wrongful convictions. *Id.*

## ARGUMENT

This Court may separate issues "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). The Court must "be satisfied that the decision to bifurcate does not unfairly prejudice the non-moving party." *Houseman v. U.S. Aviation*, 171 F.3d 1117, 1121 (7th Cir. 1999). Bifurcation is the exception, not the rule, and separate trials should not be ordered "unless such a disposition is clearly necessary." *Real v. Bunn-O-Matic*, 195 F.R.D. 618, 619 (N.D. Ill. 2000); *cf.* Fed. R. Civ. P. 42(b), advisory cmts. ("[S]eparation of issues for trial is not to be routinely ordered[.]"); *A.L. Hansen Mfg. v. Bauer Products*, 2004 WL 1125911, at *2 (N.D. Ill. May 18, 2004) ("[T]he decision to bifurcate centers on a balance of equities. However, this balance is weighted against bifurcation."). The court "should remain mindful of the traditional role of the factfinder; *i.e.* to make an ultimate determination on the basis of a case presented in its entirety." *Real*, 195 F.R.D. at 620.

Since the Seventh Circuit decided *Thomas v. Cook County*, 604 F.3d 293, 305 (7th Cir. 2009), "the weight of authority holds that bifurcation is now heavily disfavored," *Awalt v. Marketti*, 2014 WL 1161500, at *10 n.2 (N.D. Ill. Apr. 9, 2012), particularly in cases like this.[1] This Court recently rejected

---

[1] *See Baskins v. Gilmore*, No. 17-cv-7566, Dkt. 135 (N.D. Ill. Mar. 25, 2019); *McIntosh v. Chicago*, No. 17-cv-6357, Dkt. 101 (N.D. Ill. Feb. 13, 2019); *Brent-Bell v. Chicago*, No. 17-cv-1099, Dkt. 140 (N.D. Ill. Feb. 5, 2019); *Prince v. Kato*, No. 18-cv-2952, Dkt. 65 (N.D. Ill. Nov. 14, 2018); *Smith v. Burge*, No. 16-cv-3404, Dkt. 205 (N.D. Ill. Aug. 9, 2018); *Hood v. Chicago*, No. 16-cv-1970, Dkt. 86 (N.D. Ill. Jan. 9, 2017); *Estate of Loury*, 2017 WL 1425594, at *5 (N.D. Ill. Apr. 20, 2017); *Estate of McIntosh v. Chicago*, 2015 WL 5164080 (N.D. Ill. Sep. 2,

bifurcation in a case that similarly dealt with a wrongful conviction obtained by an officer who, like Kato, obtained numerous wrongful convictions, and that alleged precisely the same *Monell* claims against the City. *Gomez,* No. 18-cv-03335, Dkt. 56, Ex. A ("As this District has recognized, a judgment naming the city itself and holding it responsible for its policies may have a greater deterrent effect than a judgment against a police officer that is paid by the city. The City should not be allowed to strip [plaintiff] of this opportunity, and as such, must face the music with respect to the merits of the *Monell* claims."). Bifurcation is routinely denied in civil cases concerning repeat-offender Chicago officers. *Sierra v. Guevara,* No. 18-cv-3029, Dkt. 84 (N.D. Ill.), Ex. B; *Iglesias v. Guevara*, No. 19-cv-06508, Dkt. 130 (N.D. Ill.), Ex. C; *Rivera v. Guevara*, No. 12-cv-4428, Dkt. 443 (N.D. Ill.); *Reyes v. Guevara*, No. 18-cv-01028, Dkt. 174 (N.D. Ill.); *Solache v. City of Chicago*, No. 18-cv-02312, Dkt. 99 (N.D. Ill.); *Maysonet v. Guevara*, No. 18-cv-02342, Dkt. 137 (N.D. Ill.), Ex. D; *Rodriguez v. Guevara*, No. 18-cv-07951, Dkt. 68 (N.D. Ill.); *Bouto v. Guevara*, No. 19-cv-02441, Dkt. 105 (N.D. Ill.); *Johnson v. Guevara*, No. 20-cv-04156, Dkt. 77 (N.D. Ill.); *Gecht v. Guevara*, No. 23-cv-01742, Dkt. Nos. 112 & 126 (N.D. Ill.).

In addition, after previously accepting the City's flawed arguments, Judge Lee recently denied bifurcation in a separate wrongful conviction lawsuit against Defendant Kato, which concerned the same *Monell* claims at issue here. *Prince v. Kato, et al.*, No. 18-cv-02952, Dkt. 69 (N.D. Ill.); Ex. E. And Judge Chang denied bifurcation in a wrongful conviction case against Defendant Kato with similar *Monell* claims. *Velez v. City of Chicago*, No. 1-18-cv-08144, Dkt. 150 (N.D. Ill); Ex. F. This suit is the similar to these cases; bifurcation should be similarly denied.

---

2015); *King v. Evans*, 2015 WL 4397761, at *2 (N.D. Ill. July 17, 2015); *Wells v. Coker*, 2014 WL 716518 (C.D. Ill. Feb. 25, 2014); *Giles v. Ludwig*, 2013 WL 6512683 (N.D. Ill. Dec. 6, 2013); *Allison v. Gallagher*, 2012 WL 4760863, at *2 (N.D. Ill. Oct. 5, 2012); *Awalt*, 2012 WL 1161500; *Martinez v. Cook County*, 2011 WL 4686438, at *3-4 (N.D. Ill. Oct. 4, 2011); *Carter v. Dart*, 2011 WL 1466599, at *2-5 (N.D. Ill. Apr.18, 2011); *Clarett v. Suroviak*, 2011 WL 37838, at *1-3 (N.D. Ill. Jan. 3, 2011); *Ott v. Milwaukee*, 2010 WL 5095305, at *2 (E.D. Wis. Dec. 8, 2010); *Cage v. Chicago*, 2010 WL 3613981, at *2 (N.D. Ill. Sep. 8, 2010); *Terry v. Cook County*, 2010 WL 2720754, at *1-3 (N.D. Ill. July 8, 2010); *Bell v. Chicago*, 2010 WL 432310, at *2-4 (N.D. Ill. Feb.3, 2010); *Bradley v. Chicago*, 2010 WL 432313 (N.D. Ill. Feb.3, 2010).

I. **THE CITY'S LIABILITY DOES NOT DEPEND ON INDIVIDUAL LIABILITY, AND A TRIAL ON THE *MONELL* CLAIMS WILL CERTAINLY TAKE PLACE**

One of the City's arguments is that its own liability depends on a jury first finding individual liability. Dkt. 65 at 4-7. That is incorrect on the law and the facts.

"The actual rule," the Seventh Circuit said in *Thomas*, is that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict." 604 F.3d 293, 305 (7th Cir. 2010); *see Swanigan v. Chicago*, 775 F.3d 953, 962 (7th Cir. 2015) ("In some civil-rights cases, . . . a verdict in favor of individual defendants would not necessarily be inconsistent with a plaintiff's verdict on a factually distinct *Monell* claim."). Judges in this District analyze the propriety of bifurcation bearing in mind that a municipal policy can cause a constitutional deprivation even if a jury finds the individual officers not liable. *Bonds*, 2018 WL 1316720, at *4-5 (N.D. Ill. Mar. 14, 2018); *Pickett v. Dart*, 2014 WL919673 (N.D. Ill. Mar. 10, 2014); *Wells v. Coker*, 2014 WL 716518 (C.D. Ill. Feb. 25, 2014); *Martinez*, 2011 WL 4686438, at *1; *Cage*, 2010 WL 3613981, at *1; *Evans v. Chicago*, 2010 WL 3075651 (N.D. Ill. Aug. 5, 2010). Cases like this one, where a jury could find a policy caused a constitutional deprivation without finding misconduct by a particular officer, are different in kind from cases where municipal liability is premised on a particular officer's use of force, such as *City of Los Angeles v. Heller*, 475 U.S. 706 (1986).

Defendants contend a *Monell* verdict is impossible without individual liability, but their brief does not explain why a verdict against the City would necessarily be inconsistent with a verdict in favor of the individuals. *Carter*, 2011 WL 1466599, at *3 ("[T]he fact that Plaintiff's *Monell* claim and his claims against the individual Defendants share a common element . . . is not sufficient to justify bifurcation."). There is no doubt *Monell* liability is possible without individual liability. The City knows this is true because the City lost a *Monell* verdict in 2018 in *Rivera*, which presented the same *Monell* theory at issue here: that the City systematically suppressed exculpatory evidence. The verdict against the City in *Rivera* is independent of the jury's findings against the defendants in that case. The same is

5

true of *Fields*, 2017 WL 4553411, at *3-4. And the same would be true in this case. A verdict for Williams on his *Monell* theory that the City's file-keeping system prevented transmission of exculpatory information to the criminal justice system would be entirely consistent with a verdict that each individual Defendant did not personally suppress evidence. As this Court noted when it denied bifurcation in *Gomez*, a jury might find that the individuals put items of evidence where they were supposed to in Chicago Police Department files, but that the City had no mechanism for ensuring those files got turned over to Williams or attorneys involved in his criminal prosecution.[2]

*Monell* liability does not depend on individual liability, a verdict for the individuals will not necessarily dispose of the *Monell* claims, and a trial on those claims will be necessary no matter what.[3] The relationship between the individual and municipal claims in this case weighs against bifurcation.[4]

## II. BIFURCATION WILL DUPLICATE THE PROCEEDINGS, WASTE RESOURCES, AND INCONVENIENCE WITNESSES

---

[2] Plaintiff will present evidence demonstrating a number of ways in which City policies prevented investigative information from reaching the criminal justice system, but one example illustrates the point: the City responded to subpoenas for documents from criminal defense attorneys through the so-called Subpoena Service Unit, which often would not gather investigative materials from the detective division Areas and other units of the police department where investigative files relating to cases were kept. There were no written policies that governed the subpoena service unit and civilian personnel responding to subpoenas received no training. As a result, a systemic problem at the relevant time was that the City's response to subpoenas sent for records would exclude material exculpatory and impeachment records in the investigative files. The jury might find that this policy of the City prevented Williams from receiving investigative materials, even if the individual Defendants are not liable for that suppression.

[3] Plaintiff's case is different in this way than cases cited by the City. The result in *Andersen v. Chicago*, 2016 WL 7240765, at *3-4 (N.D. Ill. Dec. 14, 2016)—and *Williams v. Chicago*, 2018 WL 2561014, *11-12 (N.D. Ill. June 1, 2018), which simply cites *Anderson*—is based on a misunderstanding of the street-files theory. In those cases, courts decided the street-files practice depended on an individual defendant suppressing the street file. But that misses the point that the failure to transmit those files to the criminal justice system is a matter of City policy and not individual misconduct. The individual creates a file, but the constitution is violated when that file is not handed over. The file is not handed over because the City policy prevented that from happening, not necessarily because of any misconduct.

[4] In many cases, arguments against bifurcation are based on a contention that the City can still be liable for constitutional violations caused by municipal policies even if qualified immunity is granted to individuals. Though that argument is not necessary to deny bifurcation, it has force here as well. The City argues the individual Defendants are unlikely to be immune from liability. Dkt. 65 at 6-7. But the fact that the City says its officers will likely lose their claim of immunity is meaningless, unless the individuals actually disclaim immunity. If immunity is available to the individuals, then that too is a way that the City might be liable even if the individuals are not. *Gomez*, No. 18-cv-03335, Dkt. 56 at 7; *Thomas*, 604 F.3d at 305; *Bell*, 2010 WL 432310, at *3; *Martinez*, 2011 WL 4686438, at *2; *Cage*, 2010 WL 3613981, at *1.

Because the *Monell* claims in this case will be tried no matter what, Defendants' proposal means there would be two separate cases tried consecutively. That approach would multiply the proceedings, impose huge costs on the Court and the parties, and inconvenience the witnesses—all with very little benefit. These factors also weigh heavily in favor of denying bifurcation.

### A. Defendants' Proposal Would Massively Waste Resources

If Defendants' proposed bifurcation was adopted, the parties would engage in two separate rounds of discovery—the first to develop the record necessary for the individual case, and the second to supplement that record with evidence necessary for the *Monell* claims. That would mean two depositions of Defendants and most other fact witnesses (one to ask them about their role in the individual case, and a second to ask questions relevant to City policies and practices). These witnesses would literally have to be produced for their depositions on two separate occasions, months (or likely years) apart. There would be two rounds of written discovery. Two rounds of Rule 30(b)(6) depositions (because some topics on which City testimony is necessary will pertain to both the individual and *Monell* cases and other topics will relate solely to *Monell*). Two rounds of expert reports, discovery, and depositions. And during these rounds of discovery there would be motion practice as disputes arose between the parties.

Following each round of discovery, there would be dispositive motions for the Court to resolve. Perhaps without municipal claims in the case, the individual Defendants would decide to slow the process down further by taking a qualified-immunity appeal from the denial of their motions for summary judgment. After that, there would be two rounds of briefing on *Daubert* motions, two separate filings of motions in limine (with responses and replies), two pretrial orders, and two jury instruction conferences. All of this double work would be avoided entirely if it was done once, in a unified proceeding, without bifurcating the *Monell* claims.

Perhaps most importantly, Defendants' plan would require two trials. This would impose a huge burden on the Court, on witnesses, and on the parties. Each witness would be called twice— once to talk about the facts of the individual case, and a second time to talk about the policies of the City, and the way those policies impacted the individual case. Experts would have to fly to Chicago twice to testify, at great expense to the parties. Exhibits would be introduced against the individual Defendants and then re-introduced against the City in the second trial. There would be two rounds of opening arguments and two rounds of closing arguments. Again, each trial would bring another round of motion practice. Courts, including this one, have decided in these circumstances that bifurcation makes little sense. *Cadiz v. Kruger*, 2007 WL 4293976, at *5 (N.D. Ill. Nov. 29, 2007) (discussing precisely these sorts of problems with assuming that judicial economy is served by bifurcation); *see also Gomez*, No. 18-cv-3335, Dkt. 65 at 8-9; *Awalt*, 2012 WL 1161500, at *10; *Bell*, 2010 WL 432310, at *4.

Moreover, this massive duplication of proceedings and the attendant years-long delay in resolving the case would have occurred even though much of the evidence relevant to the *Monell* theories is admissible against the individual Defendants at the first trial, and much of the evidence relevant to the individual claims at the first trial must also be presented at the second trial. On the former point, evidence of a municipal policy or practice is probative of whether an individual Defendant engaged in a particular course of conduct consistent with those policies on a particular occasion. *Coleman v. Peoria*, 2016 WL 5497363, at *6 (C.D. Ill. Sep. 27, 2016) (denying bifurcating because *Monell* evidence was "relevant to the actions of the defendant officers, who would, assuredly, claim to have acted in conformity with sanctioned department policies and practices"). On the latter point, *Monell* requires proof that a policy was the moving force behind the constitutional violation, *Thomas*, 604 F.3d at 306, and so the *Monell* trial will require lots of evidence about the underlying crime, investigation, and wrongful conviction. *See Houskins v. Sheahan*, 549 F.3d 480, 496 (7th Cir. 2008)

8

(affirming a decision not to sever claims against two defendants because those claims entailed "an overlap in the facts, evidence, and witnesses required").

Defendants' proposal would increase the burden on the Court and parties, it will multiply the costs of the litigation, and it will inconvenience many third-party witnesses. These burdens would be imposed without any offsetting benefit.

### B. Defendants' Concerns About Burden Are Misplaced

Defendants' concerns about the burden presented by the *Monell* claims are misplaced. First, many of those concerns fall away once it is clear that the *Monell* claims will be tried no matter what, and so the choice is between trying them together with the other claims or trying them in the separate proceeding just described.

Second, the City's judicial-economy argument is nothing more than an argument that *Monell* discovery is time consuming and expensive for it. Dkt. 65 at 7-9. However, the expense of defending against weighty *Monell* theories—ones on which the City has twice been found liable the last two years for depriving young men of decades of their lives—is not a justification for bifurcation. *Awalt*, 2012 WL 1161500, at *10 ("[T]he plaintiff is the master of her complaint, and so the (often times extraordinary) costs associated with bringing a claim for municipal liability should not sway the Courts' consideration too far."). Moreover, properly analyzed, bifurcation will most likely increase the cost of prosecuting and defending the case as a whole. *Clipco v. Ignite Design*, 2005 WL 2861032, at *3 (N.D. Ill. Oct. 28, 2005) (bifurcation not appropriate when it "would result in unnecessary delay, additional expense, or some other form of prejudice").

Third, the City argues that eliminating the *Monell* claims will conserve judicial resources because adjudication of discovery, motions, and a trial of those claims will no longer be necessary. Dkt. 65 at 7-8. Not only is that flatly incorrect, for the reasons explained already, but it is also perverse to argue that a party should be able to achieve *de facto* dismissal of the claims against it, by way of a

9

motion to bifurcate, by suggesting that it is burdensome for our court system to adjudicate those claims—a sentiment that this Court took particular note of in denying *Monell* bifurcation in *Gomez*, 18-cv-3335, Dkt. 65 at 9-10. This is particularly true when one considers that section 1983 is designed to ensure municipal accountability for violations of civil rights. *Owen v. City of Independence*, 445 U.S. 622 (1980). It is also not the case that *any* burden justifies bifurcation, otherwise "courts always would bifurcate *Monell* claims (but they do not do so)." *Cadiz*, 2007 WL 4293976, at *3.

Finally, the City overstates the burden of discovery necessary to try the *Monell* claims. Dkt. 65 at 8-12. Much of what the City will have to produce here—whether written policies, Rule 30(b)(6) testimony, employee records, or a sample of homicide files—has been produced already in other cases involving Kato and the City of Chicago's policies and practices, including *Prince; Velez; Chatman v. City of Chicago*, No. 1:14-cv-02945 (N.D. Ill.)*; Rivera;* and *Fields. See Cadle*, 2015 WL 6742070, at *2 ("The City is very familiar with this type of discovery, and the Court has no doubt that the City has produced similar information in other cases. The incremental burden of doing so again here does not militate heavily in favor of bifurcation."). There is no doubt that materials from other cases can be used here. Indeed, it may be the case that the *Monell* claims can be litigated entirely based on documents produced in other cases without the production of additional materials here. The City is also conducting *Monell* discovery in another Kato case simultaneously—*Velez v. City of Chicago*—which means that the City's burden of conducting this discovery will be divided among multiple cases.

The City refers to the *Prince* litigation, and it complains that discovery there was burdensome and it did not have the proper time to review the plaintiff's document productions before settling. However, whether the City had time to review or not, that does not change that the parties in this case are represented by counsel who have already exchanged relevant *Monell* documents, and it does not change the fact that the City is currently litigating *Monell* claims based on that evidence in *Velez*, in which Judge Chang denied bifurcation.

The City complains about the volume of documents produced relating to its practice of fabricating and coercing false confessions in criminal cases, and it contends in its brief that just "ten percent of the over 300 separate incidents [of fabricated confessions] of alleged misconduct contained in the Plaintiff's 235,000-page production made in *Prince* and at issue in this case, involve Defendant Kato." Dkt. 65 at 10-11. It is not entirely clear what point the City is trying to make. If the City is contending that a single officer's participation in 10% of the false confession cases in Chicago history doesn't warrant *Monell* discovery, it is shooting itself in the foot—the fact that the central Defendant in this case is notoriously involved in many wrongful conviction cases is even more reason to examine the City's culpability during discovery and trial and to deny bifurcation. If the City is contending that some of the false confession materials are unrelated to Williams's particular case, that of course is the reality of *Monell* discovery, which requires a party to show that a *widespread* municipal practice was the cause of a constitutional violation in the particular case before the Court. If the City is arguing that there are too many documented instances of false confessions taken from the Chicago Police Department for it to effectively review and respond to, that argument should be firmly rejected. The City would in that case be arguing that because the number of false confessions taken by Chicago police is so voluminous the City should not have to participate in discovery relating to that pattern of misconduct. In other words, the City would be taking the position that bifurcation is more warranted in cases where the pattern of misconduct is worse and the *Monell* claims are more meritorious.

Finally, to the extent that there are concerns during litigation about the burdens of discovery, as Judge Valdez noted when she denied bifurcation in *Iglesias v. Guevara*, No. 19-cv-06508, Dkt. 131 (N.D. Ill), those issues can be resolved through the normal process imposed by the Federal Rules, not *Monell* bifurcation. *See* Ex. C; *see also Carter*, 2011 WL 1466599, at *5.

### III.   THE BALANCE OF PREJUDICE WEIGHS AGAINST BIFURCATION

The City also argues that without bifurcation, Defendants will be prejudiced at trial. Dkt. 65

11

at 12-14. This argument is without merit and provides no justification for bifurcation at this stage. The only potential prejudice here is to Plaintiff if the *Monell* claims are bifurcated.

The argument that *Monell* evidence will prejudice the individual Defendants at trial should be rejected. As discussed already, a substantial portion of the *Monell* evidence will be directly relevant to Plaintiff's claims against the individuals, and it is therefore not unfairly prejudicial at all. Moreover, even if there was a concern about prejudice to the individual Defendants at trial, that would not justify bifurcation. Instead, limiting instructions are the established mechanism for managing prejudice. Fed. R. Evid. 105 (instructions given to "restrict the evidence to its proper scope"); *U.S. v. Gomez*, 763 F.3d 845, 860-61 (7th Cir. Aug. 8, 2014) (en banc) (limiting instructions sufficient to manage any prejudice caused by the admission of other-acts evidence, and commenting that "[l]ay people are capable of understanding the foundational principle in our system of justice that we try cases, rather than persons."); *Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 635 (7th Cir. 2018) (courts assume jurors follow limiting instructions); *McLaughlin v. State Farm*, 30 F.3d 861, 870-71 (7th Cir. 1994) (no need to bifurcate as we presume jury will follow limiting instruction); *Gomez*, No. 18-cv-03335, Dkt. 65 at 4 ("Regarding potential prejudice to the Defendant Officers, a limiting instruction to the jury is the proper mechanism to address that concern"); *Awalt*, 2014 WL 1161500, at *13.

Finally, any prejudice avoided by bifurcation must be weighed against the prejudice to Williams. *Houseman*, 171 F.3d at 1121. The only truly unfair prejudice here is that which Williams would suffer if bifurcation was granted. First, because the "claims asserted by Plaintiff are interwoven . . . it would be an unreasonable hardship and completely uneconomical to require proof of virtually the same facts in two separate trials." *Ratliff v. Chicago*, 2012 WL 5845551, at *6 (N.D. Ill. Nov. 19, 2012). Second, bifurcation would cause delays in the final resolution of Williams's claims, and it would drive up the cost of the litigation. *Clipco*, 2005 WL 2861032, at *3 (bifurcation inappropriate when it "would result in unnecessary delay, additional expense, or some other form of prejudice"); *Terry*, 2010

WL 2720754, at *2 ("[J]udges in this district have echoed Plaintiff's concerns about delay of the case and possible prejudice to Plaintiff from that delay."). Third, if the case was bifurcated, there would be numerous discovery disputes about what is "*Monell*-only" discovery and what discovery properly pertains to policies and practices that are relevant to Williams's claims against the individual Defendants. *Ott*, 2010 WL 5095305, at *3 (denying bifurcation where it was "likely that bifurcating discovery in this case will lead to more disputes as to whether certain discovery requests relate to the permissible individual claims or the impermissible *Monell* claims"); *see also Sierra*, 1:18-cv-3029, Dkt. 88. This is precisely the case where bifurcation will "add unnecessary complexity and confusion to the discovery process" and where "discovery disputes are brewing." *Terry*, 2010 WL 2720754, at *3.

The risk of unfair prejudice to Defendants is extremely low, particularly at this stage of the case. On the other hand, the prejudice to Williams from bifurcation is obvious and pronounced. In such a circumstance, the balance of equities favors a unitary proceeding.

## IV. BIFURCATION WOULD VIOLATE THE SEVENTH AMENDMENT

The City's proposal would require two separate trials, in front of two separate juries, which would both consider the same issues. Most importantly, both juries would be required to consider whether and how Williams's constitutional rights were violated by the suppression of evidence—the first to assess whether the individual Defendants violated his right to due process, and the second to assess whether the City's policies were the moving force behind that same violation.

The Seventh Amendment prohibits dividing issues in ways that requires a second jury to reexamine an issue decided by the first. *Matter of Rhone-Poulenc Rorer*, 51 F.3d 1293, 1303 (7th Cir. 1995) ("[T]he judge must not divide issues between separate trials in such a way that the same issue is reexamined by different juries."); *see also Blyden v. Mancusi*, 186 F.3d 252 (2d Cir. 1999) (under the Seventh Amendment, "a given issue may not be tried by different, successive juries"); *Castano v. American Tobacco*, 84 F.3d 734, 751 (5th Cir. 1996) ("The Seventh Amendment entitles parties to have

13

fact issues decided by one jury, and prohibits a second jury from reexamining those facts and issues. Thus, the Constitution allows bifurcation of issues that are so separable that the second jury will not be called upon to reconsider findings of fact by the first."); 9A Federal Practice & Procedure § 2391 (2016). Defendants' proposal violates the Seventh Amendment as well.

## V. THE CITY'S PROPOSED "LIMITED CONSENT TO ENTRY OF JUDGMENT" IS PROCEDURALLY IMPROPER AND SHOULD BE IGNORED

In an attempt to avoid problems its proposed bifurcation creates, the City attaches what it calls a "Limited Consent to Entry of Judgment" to its motion, by which it states it would accept a judgment against it if the individual Defendants were found to have violated Williams's constitutional rights but were also entitled to immunity. Dkt. 65 at 7. As the Seventh Circuit has observed recently, this so-called "consent" is not authorized by the Federal Rules of Civil Procedure, and it is therefore procedurally deficient. *Swanigan*, 775 F.3d at 959-62. It is not a Rule 68 offer of judgment, because it does not satisfy Williams's demands. *Id.* It is not a Rule 16 stipulation agreed upon by the parties, both because it does not stipulate to any facts and because Williams rejects it. (That might be different if the City was proposing to stipulate that it had a policy and practice of suppressing exculpatory information in street files during the relevant time.) It is not a permissible responsive pleading under Rule 7(a). *Haven v. Polksa*, 215 F.3d 727, 732 (7th Cir. 2000). Concerningly, the Limited Consent states that "if no underlying constitutional violation is found against any of the Police Officer Defendants, this Court would enter judgment in favor of the City on the *Monell* claim." Dkt. 65-6. As noted above, this would be a roundabout way of seeking dismissal of a claim with merit and for liability that can be found even without individual Defendant culpability. The City's proposed consent should be ignored.

## VI. STRONG NON-ECONOMIC INTERESTS WEIGH AGAINST BIFURCATION

Finally, Williams has an extremely strong non-economic interest in preventing future constitutional violations, particularly wrongful convictions. Defendants' dismissal of that interest, and its overemphasis on monetary damages as the end-all-be-all of reform, is shortsighted and self-serving.

14

Dkt. 65 at 14-15. Deterrence of constitutional misconduct is a fundamental purpose of section 1983. *Owen*, 445 U.S. at 627 ("[Section 1983] was intended not only to provide compensation to victims of past abuses, but to serve as a deterrent against future constitutional deprivations[.]"); *see also Monterey v. Del Monte Dunes at Monterey*, 526 U.S. 687, 727 (1999) ("There is no doubt that the cause of action created by § 1983 is, and was always regarded as, a tort claim . . . it is designed to provide compensation for injuries arising from the violation of legal duties and thereby, of course, to deter future violations."); *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). "Some cases have remedial import beyond the individual plaintiff's claim for monetary damages, and § 1983 provides a vehicle for obtaining other judicial relief against governmental policies that violate constitutional rights." *Swanigan*, 775 F.3d at 962; *Medina v. Chicago*, 100 F. Supp. 2d 893, 896 (N.D. Ill. 2000) ("Deterrence of future misconduct is a proper object of our system of tort liability . . . . Depending on the size of the verdict and the size of the municipality . . . a judgment against a police officer (even one paid for by the municipality) may be less likely to prompt the municipality to act to prevent future violations than a judgment naming the municipality itself as responsible based on its polices and customs.").

This case concerns a wrongful conviction caused by City policies that deprived countless individuals of fair trials and allowed dangerous officers like Kato to terrorize the community with impunity. The stakes in a civil rights lawsuit will rarely be higher than they are here, and the *Monell* claims are of profound importance to future institutional reform. Courts have recognized that lawsuits like this "can be distinguished from other lawsuits against the City in which district courts have bifurcated *Monell* claims." *Smith*, No. 16-cv-3404, Dkt. 205, at 2. The strong non-economic objectives of Williams's lawsuit also weigh against bifurcation.

## CONCLUSION

The City cannot avoid litigation over its role in the misconduct alleged. The City's motion should be denied.

15

Respectfully submitted,

**BERNARD WILLIAMS**

By: /s/ Alyssa Martinez
*One of Plaintiff's Attorneys*

Arthur Loevy
Jon Loevy
Steve Art
David B. Owens
Alyssa Martinez
LOEVY + LOEVY
311 N. Aberdeen
Chicago, Illinois 60607
(312) 243-5900
alyssa@loevy.com

## CERTIFICATE OF SERVICE

I, Alyssa Martinez, an attorney, hereby certify that on January 11, 2024, I filed the foregoing PLAINTIFF'S RESPONSE IN OPPOSITION TO THE CITY OF CHICAGO'S MOTION TO BIFURCATE *MONELL* CLAIMS using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Alyssa Martinez
*One of Plaintiff's Attorneys*