## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| BERNARD WILLIAMS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No.: 21 C 819** |
| | ) | |
| KRISTON KATO, SAMUEL CIRONE, | ) | |
| PATRICIA SAWCZENKO, JOHN FARRELL, | ) | **Hon. Sunil R. Harjani,** |
| SERGEANT CHASEN, M. CRONIN (Star No. | ) | **District Judge** |
| 15490), J. RAWSKI (Star No. 3556), PAMELA | ) | |
| RISLEY, as Special Representative of | ) | **Hon. Heather K. McShain,** |
| SERGEANT J. RISLEY (Star No. 975), | ) | **Magistrate Judge** |
| UNKNOWN EMPLOYEES of the CITY OF | ) | |
| CHICAGO, and the CITY OF CHICAGO, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **Defendants.** | ) | |

## DEFENDANT OFFICERS' ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES AND JURY DEMAND

NOW COMES Defendants KRISTON KATO, SAMUEL CIRONE, PATRICIA SAWCZENKO, JOHN FARRELL, MICHAEL CHASEN, MICHAEL CRONIN, JOHN RAWSKI, and PAMELA RISLEY, as special representative of SGT. JOHN RISLEY ("Defendant Officers"), by and through their attorneys, Steven B. Borkan, Timothy P. Scahill, Graham P. Miller, Misha Itchhaporia, and Christiane E. Murray of BORKAN & SCAHILL, LTD., and for their Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint, state as follows:

### INTRODUCTION

1. Plaintiff Bernard Williams was just 17 years old when he was wrongly convicted of the 1996 shooting murder of Gary Thomas. Williams spent more than 23 years in prison for a crime he did not commit.

**ANSWER:** Defendant Officers admit Plaintiff was convicted of the 1996 shooting murder of Gary Thomas and claimed to be 17 years old when he was arrested. Defendant Officers currently have insufficient information to form a belief as to the truth or falsity of the amount of time Plaintiff spent in prison. Defendant Officers deny the remaining allegations in this Paragraph.

2. Williams' wrongful conviction was caused by the egregious misconduct of the Defendant Chicago Police Officers, who fabricated evidence and suppressed evidence to secure Williams' arrest, prosecution, and conviction.

**ANSWER:** Deny.

3. For example, Defendants fabricated an entirely fictitious report, which stated that Williams confessed to the crime. This was untrue. Williams has steadfastly maintained his innocence.

**ANSWER:** Deny.

4. Defendants also used illegal and abusive police interrogation tactics to coerce Williams' co-defendant DeAngelo Johnson into falsely confessing to the crime, in which he also falsely implicated Williams. Defendants knew at all times that the statements they coerced from Johnson were not true.

**ANSWER:** Deny.

5. And Defendants manipulated witnesses into providing false identifications of Williams and statements to implicate him in the crime.

**ANSWER:** Deny.

6. Defendants never recovered a murder weapon, and no physical evidence has ever tied Williams to the shooting. Williams' conviction was based solely on Defendants' misconduct.

**ANSWER:** Defendant Officers admit that they never recovered a murder weapon. Defendant Officers currently have insufficient information to form a belief as to the truth or falsity as to whether any physical evidence ever tied Plaintiff to the shooting.

2

Defendants deny the remaining allegations in this Paragraph.

7. Williams' wrongful conviction was one of many examples of a custom by Defendant Kato and his colleagues at Detective Area Four of the Chicago Police Department of fabricating evidence, extracting false confessions and statements, and suppressing evidence to convict innocent people of crimes. Indeed, Defendant Kato throughout his tenure beat a number of suspects into providing false confessions and coerced and used force against witnesses during investigations to secure false statements from them, implicating innocent individuals in crimes they had not committed.

**ANSWER:** Deny.

8. Despite numerous complaints and allegations against Defendant Kato, the City of Chicago took no action to correct his pattern of misconduct and never disciplined him.

**ANSWER:** Defendant Officers deny Defendant Kato had a pattern of misconduct and therefore deny the allegations in this Paragraph.

9. In February 2019, Williams' conviction was vacated by the Illinois Appellate Court.

**ANSWER:** Admit.

10. In August 2023, he was acquitted of all charges against him.

**ANSWER:** Defendant Officers admit that Plaintiff was found not guilty of the murder charges against him in August 2023 but deny that Plaintiff was acquitted of "all charges against him" in August 2023.

11. Williams seeks justice for the harm that Defendants have caused and redress for the loss of liberty and the terrible hardship that he has endured and continues to suffer as a result of Defendants' misconduct.

**ANSWER:** Deny.

## JURISDICTION AND VENUE

12. This action is brought pursuant to 42 U.S.C. § 1983 and Illinois law to redress Defendants' tortious conduct and their deprivation of Plaintiff's rights secured by the U.S. Constitution.

**ANSWER:** Defendant Officers admit that Williams brings this action under such cited authorities but deny the validity of such action. Defendant Officers deny that they deprived Plaintiff of any rights secured by the Constitution or committed any tortious conduct.

13. This Court has jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction of his state-law claims pursuant to 28 U.S.C. § 1367.

**ANSWER:** Defendant Officers admit the Court has jurisdiction over this matter.

14. Venue is proper under 28 U.S.C. § 1391(b). Plaintiff resides in this judicial district, and the events and omissions giving rise to Plaintiff's claims occurred within this judicial district, including the investigation, prosecution, and trial resulting in Plaintiff's conviction.

**ANSWER:** Defendant Officers admit venue is proper, but deny the facts upon which venue is based as alleged herein.

## PARTIES

15. Plaintiff Bernard Williams spent more than 23 years wrongfully incarcerated for a murder that he did not commit. Williams is a 40-year-old resident of Chicago, Illinois. He is currently spending as much time as possible with his family.

**ANSWER:** Defendant Officers have insufficient information to form a belief as to the truth or falsity as to Plaintiff's age and residency, the exact amount of time Plaintiff was incarcerated, and how much time Plaintiff currently spends with his family. Defendant Officers deny the remaining allegations in this Paragraph.

16. At all times relevant to the events described in this Complaint, Defendants Kriston Kato, Samuel Cirone, Patricia Sawczenko, John Farrell, Sgt. Chasen, M. Cronin, J.

4

Rawski, Sgt. J. Risley, and other unknown law enforcement officers were police officers in the Chicago Police Department acting under the color of law and within the scope of their employment for the City of Chicago.

**ANSWER:** Defendant Officers have insufficient information on which to form a belief as to the truth or falsity as to the allegations regarding unknown police officers. Defendant Officers admit the remaining allegations in this Paragraph.

17. Pamela Risley, the special representative for Sgt. J. Risley, deceased, is named as a Defendant in her capacity as special representative of Sgt. J. Risley, as successor in interest and to defend this action on behalf of Defendant Risley.

**ANSWER:** Defendant Officers admit that the Court has appointed Pamela Risley to serve as a special representative to defend the action on behalf of Sgt. J. Risley, deceased. Defendant Officers deny that Pamela Risley is a successor in interest as alleged by Plaintiff.

18. At all times relevant to the events described in this Complaint, Defendants Chasen and other unknown law enforcement officers supervised the officers in the preceding paragraph, acting under color of law and within the scope of their employment for the City of Chicago, they participated in the misconduct alleged in this Complaint and/or facilitated, condoned, approved, and turned a blind eye to the constitutional violations committed by the officers in the preceding paragraph.

**ANSWER:** Defendant Officers admit that at certain times relevant to this Complaint, Chasen assigned detectives to conduct follow-up investigation acting under color of law and within the scope of his employment for the City of Chicago. Defendant Officers have insufficient information on which to form a belief as to the truth or falsity as to the allegations regarding unknown police officers. Defendant Officers deny the remaining allegations in this Paragraph.

19. Defendant City of Chicago is an Illinois municipal corporation and is and/or was the employer of each of the Defendants. The City of Chicago is liable for all torts committed by Defendants pursuant to the doctrine of *respondeat superior*. The City of Chicago is additionally

responsible for the policies and practices of the Chicago Police Department that caused Williams' wrongful conviction.

**ANSWER:** Defendant Officers admit that Defendant City of Chicago is a municipal corporation that is or was the employer of the above-named Defendant Officers, that under certain circumstances the City of Chicago can be held liable based on *respondeat superior* for the acts of its employees and under certain circumstances can be held responsible for the policies and practices of the Chicago Police Department, but deny any such liability exists in this matter and deny Plaintiff was wrongfully convicted.

## FACTS

### The Shooting of Gary Thomas

20. On August 23, 1996, Gary Thomas was shot and killed as he stood on the sidewalk in front of Wash's Lounge, a tavern in the West Garfield Park neighborhood of Chicago.

**ANSWER:** Admit.

21. Thomas was standing outside with Eric Smith, Martinoe Powell, and Powell's young son. Smith, Powell, and his son were not injured, but three bystanders were also hit during the shooting.

**ANSWER:** Defendant Officers admit that Thomas was standing outside with Eric Smith, Martin Nash, and others at the time of the shooting, that Smith was not injured, and that three bystanders were also hit during the shooting. Defendant Officers have insufficient information on which to form a belief as to the truth or falsity of the remaining allegations in this Paragraph.

22. Police officers arrived at the scene and spoke with one of the victims who identified the shooters as two Black males, approximately 18-19 years old, average height.

**ANSWER:** Admit.

23. At the hospital, Defendant Sawczenko and two other detectives spoke to Martinoe Powell. Powell stated that he did not recognize the shooters. He indicated that Eric Smith might be able to identify them.

6

**ANSWER:**     Defendant Officers admit that detectives spoke to a witness at the hospital who stated he did not recognize the shooters but indicated that Eric Smith might know who they were. Defendant Officers have insufficient information on which to form a belief as to the truth or falsity of the remaining allegations in this Paragraph.

24.     On the day of the shooting, none of the victims or witnesses ever identified Williams as the perpetrator.

**ANSWER:**     Defendant Officers admit that, on the day of the shooting, none of the victims or witnesses identified Plaintiff by name as the perpetrator.

25.     The reason why no one identified Williams as the perpetrator is because Williams had nothing to do with the shooting.

**ANSWER:**     Deny.

### Defendants Frame Williams

26.     Defendants Kato, Cirone, and Farrell picked up the investigation with Defendant Sawczenko.

**ANSWER:**     Defendant Officers admit that Kato, Cirone, and Farrell worked on the investigation along with Sawczenko.

27.     Unable to identify a suspect, Defendants framed Williams for the crime.

**ANSWER:**     Deny.

28.     After interviewing Eric Smith, who stated that he recognized the two shooters but could not provide any names, Defendants fabricated a report stating that Smith had identified one of the shooters as Williams. Smith had done no such thing, and Defendants knew he had not.

**ANSWER:**     Defendant Officers admit that Eric Smith was interviewed and stated he recognized the two shooters. Defendant Officers deny the remaining allegations in this Paragraph.

29.     Defendants then manipulated, coerced, and induced Powell into identifying Williams as one of the shooters in a photo array.

**ANSWER:**     Deny.

30. For example, at the time of the investigation, Defendants knew that Powell, who was abusing drugs, was vulnerable to coercive tactics. Defendants fed Powell information on the case, identified Williams' photo in the photo array, and manipulated Powell into identifying Williams as one of the shooters.

**ANSWER:** Deny.

31. Based on this fabricated information and without probable cause or a warrant, Defendants located Williams, who was in a car with DeAngelo Johnson and Shawn Harris, arrested them, and brought all three of them to Chicago Police Detective Area Four, where they were questioned.

**ANSWER:** Defendant Officers admit that they located Plaintiff, who was in a car with DeAngelo Johnson and Shawn Harris, and brought them to Area Four where they were questioned. Defendant Officers deny the remaining allegations in this Paragraph.

### Defendants Obtain Fabricated Statements from Johnson

32. At Area 4, Defendants Kato and Cirone interrogated Johnson several times about the shooting.

**ANSWER:** Defendant Officers admit that Defendant Kato and Cirone interviewed Johnson several times about the shooting at Area 4.

33. During the interrogations, Kato and Cirone physically and psychologically abused Johnson and forced him to confess to the Thomas shooting.

**ANSWER:** Deny.

34. The false confession fabricated by Kato and Cirone and attributed to Johnson falsely implicated Williams in the shooting.

**ANSWER:** Defendant Officers admit that Johson's confession implicated Plaintiff in the shooting. Defendant Officers deny the remaining allegations in this Paragraph.

35. At the time, Johnson was just 16 years old and had a low IQ. Johnson was also

8

detained for over 24 hours and deprived of food and sleep.

**ANSWER:** Defendant Officers are without information sufficient to form a belief as to the truth or falsity of the allegation as to Johnson's IQ. Defendant Officers deny the remaining allegations in this Paragraph.

36. Johnson was never a suspect in the shooting. The only reason Johnson was detained and interrogated was because he was in the car with Williams.

**ANSWER:** Defendant Officers admit that Johnson was not identified as one of the two suspects in this shooting until he, Plaintiff, and Harris were picked up and questioned. Defendant Officers deny Johnson "was never a suspect in the shooting" and deny the remaining allegations in this Paragraph.

37. Defendants knew that Johnson's youth rendered him particularly vulnerable to coercive interrogation tactics. Yet they abused their police power and used illegal tactics to secure a confession knowing that it was false.

**ANSWER:** Deny.

38. In addition, Defendants interrogated Williams and accused him of lying when he professed his innocence.

**ANSWER:** Defendant Officers admit that they questioned Plaintiff and presented him with contrary evidence when he denied knowledge of the murder.

39. When Williams asked for an attorney and said he did not want to talk with Defendants, they ignored his requests and continued their interrogation.

**ANSWER:** Deny.

40. Forced to talk, Williams truthfully told Defendants he knew nothing about the shooting.

**ANSWER:** Defendant Officers admit that Plaintiff, before ultimately confessing to his involvement in the shooting, denied any knowledge. Defendant Officers deny the remaining allegations in this Paragraph.

41. Defendants later interrogated Williams again. During this interrogation, Defendants lied to him about evidence they uncovered from other witnesses in an attempt to

9

secure false and involuntary statements they could use to incriminate Williams.

**ANSWER:** Defendant Officers admit they later questioned Plaintiff again. Defendant Officers deny the remaining allegations in this Paragraph.

42. Defendants believed they needed to coerce and fabricate statements from Williams because they knew they lacked any evidence to link Williams to the Thomas murder.

**ANSWER:** Deny.

43. Williams was detained and interrogated in this coercive manner for over 24 hours, sleep deprived and without access to his attorney or his mother despite his repeated requests for them.

**ANSWER:** Deny.

44. After the interrogation, Defendants fabricated a police report which stated that Williams confessed to participating in the shooting. Defendants had no video recording or handwritten notes memorializing this interrogation where Williams allegedly confessed, nor could they because it never happened.

**ANSWER:** Defendant Officers admit that there is no video recording or and that Defendant Officers did not take handwritten notes of Williams' confession. Defendant Officers deny the remaining allegations in this Paragraph.

45. Williams has consistently asserted his innocence.

**ANSWER:** Deny.

46. The same day, Defendants located Powell and brought him to Area 4, forcing him once again into falsely identifying Williams as one of the shooters during an in-person lineup.

**ANSWER:** Defendant Officers admit that on September 11, 1996, an individual they knew as Martin Nash agreed to come to Area 4 and identified Plaintiff as one of the shooters during an in-person lineup. Defendant Officers deny the remaining allegations in this Paragraph.

47. In committing the misconduct described above, Defendants made an agreement with one another, and with others currently unknown to Plaintiff, to individually and jointly

10

secure a false and involuntary confession from Johnson, to manipulate and coerce witnesses into implicating Williams in the shooting, to fabricate evidence, and to use that false evidence to initiate and perpetuate false criminal charges against Williams.

**ANSWER:** Deny.

### The City of Chicago's Policy and Practice of Prosecuting Innocent Persons in Violation of Due Process and Fabricating Confessions, Witness Statements, and Witness Identifications

48. The Chicago Police Department is responsible by virtue of its official policies for scores of miscarriages of justice like that inflicted upon Plaintiff.

**ANSWER:** Deny.

49. Since 1986, no fewer than 70 cases have come to light in which Chicago police officers have fabricated false evidence or have suppressed exculpatory evidence to cause the convictions of innocent persons for serious crimes they did not commit.

**ANSWER:** Defendant Officers have insufficient information to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

50. These cases include many in which Chicago police officers used similar tactics that Defendants employed against Plaintiff in this case, including: (1) using physically and psychologically coercive tactics to obtain involuntary and false confessions; (2) fabricating witness statements; (3) concealing exculpatory evidence; (4) manipulating witnesses in order to influence their testimony; and (5) using other tactics to secure the arrest, prosecution and conviction of a person without probable cause and without regard to the person's actual guilt or innocence.

**ANSWER:** Defendant Officers deny using any of these tactics against Plaintiff and therefore deny the allegations in this Paragraph.

51. At all times relevant hereto, members of the Chicago Police Department, including Defendants in this action, routinely manufactured evidence against innocent persons by

coercing, manipulating, threatening, pressuring, and offering inducements to suspects and witnesses to obtain false statements implicating innocent persons, knowing full well that those statements were false. As a matter of widespread custom and practice, members of the Chicago Police Department, including Defendants in this action, contrived false narratives that were fed to vulnerable suspects and witnesses, who then adopted those false witness narratives as their own for the purpose of wrongly convicting an innocent person. Furthermore, Chicago Police Department officers systematically suppressed exculpatory and/or impeaching material by concealing evidence that a witness was coerced, manipulated, threatened, pressured, or offered inducements to make false statements.

**ANSWER:** Defendant Officers deny using any of these tactics against Plaintiff and therefore deny the allegations in this Paragraph.

52. The municipal policy and practice described in the paragraphs above was recently described in a Federal Bureau of Investigation FD-302 Report of an interview with Assistant State's Attorney Terence Johnson. The Report documents, *inter alia*, that Chicago police detectives would feed information to witnesses and coach them through court-reported and handwritten statements, coerce witnesses into sticking to a detective's theory of the case, physically abuse witnesses, and work together to develop and rehearse false narratives so that there were no inconsistencies in the witnesses' stories.

**ANSWER:** Defendant Officers deny they had such a policy or practice. Defendant Officers have insufficient information to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph.

53. At all times relevant hereto, members of the Chicago Police Department, including Defendants in this action, systematically suppressed exculpatory and/or impeaching material by intentionally secreting discoverable reports, memos, and other information in files that were maintained solely at the police department and were not disclosed to the participants of

the criminal justice system. As a matter of widespread custom and practice, these clandestine files were withheld from the State's Attorney's Office and from criminal defendants, and they were routinely destroyed or hidden at the close of the investigation, rather than being maintained as part of the official file.

**ANSWER:** Deny.

54. Consistent with the municipal policy and practice described in the preceding paragraph, employees of the City of Chicago, including the named Defendants, concealed exculpatory evidence from Plaintiff.

**ANSWER:** Deny.

55. The existence of this policy and practice of suppressing exculpatory and/or impeaching material in clandestine files was established and corroborated in the cases of, inter alia, *Fields v. City of Chicago*, 10 C 1168 (N.D. Ill.) and *Jones v. City of Chicago*, 87 C 2536 (N.D. Ill.).

**ANSWER:** Defendant Officers deny that they had such a policy and practice. Defendant Officers have insufficient information to form a belief as to the truth or falsity of the remaining allegations in this Paragraph.

56. The policies and practices of file suppression at issue in *Fields* applied throughout the timeframe from the 1980s through the 2000s, including at the time of the Thomas murder and investigation at issue here.

**ANSWER:** Defendant Officers deny that they had such a policy and practice. Defendant Officers have insufficient information to form a belief as to the truth or falsity of the remaining allegations in this Paragraph.

57. In addition, a set of clandestine street files related to Area Five homicide was found in the case of *Rivera v. City of Chicago*, 12 C 4428 (N.D. Ill.). Those files, for a period in the 1980s and 1990s, contained exculpatory and impeaching evidence not turned over to criminal defendants.

13

**ANSWER:** Defendants Officers deny that the allegations in this Paragraph are directed at them. To the extent that the allegations are directed against the individually named Defendant Officers, Defendant Officers have insufficient information to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

58. Put simply, the policy and practice of suppressing exculpatory and/or impeaching material evidence was alive and well at the time of the investigation into the Thomas murder, including in the Area Four Detective Division.

**ANSWER:** Deny.

59. The City of Chicago and the Chicago Police Department routinely failed to investigate cases in which Chicago Police Detectives recommended charging an innocent person with a serious crime, and no Chicago Police Officer has ever been disciplined as a result of the misconduct in any of those cases.

**ANSWER:** Defendants Officers deny that the allegations in this Paragraph are directed at them. To the extent that the allegations are directed against the individually named Defendant Officers, Defendant Officers have insufficient information to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

60. Prior to and during the period in which Plaintiff was falsely charged and convicted with the Thomas murder, the City of Chicago also operated a dysfunctional disciplinary system for Chicago Police Officers accused of serious misconduct. The City almost never imposed significant discipline against police officers accused of violating the civil and constitutional rights of members of the public. The Chicago Police disciplinary apparatus included no mechanism for identifying police officers who were repeatedly accused of engaging in misconduct.

**ANSWER:** Defendant Officers deny Plaintiff was falsely charged with and convicted of the Thomas murder. Defendants Officers deny any remaining allegations in this Paragraph are directed at them. To the extent that the allegations are directed against the individually named Defendant Officers, Defendant Officers have insufficient information to form a belief as to the truth or falsity of the allegations

14

contained in this Paragraph.

61.     As a matter of both policy and practice, municipal policy makers and department supervisors condoned and facilitated a code of silence with the Chicago Police Department. In accordance with this code, officers refused to report and otherwise lied about misconduct committed by their colleagues, including the misconduct at issue in this case.

**ANSWER:**     Defendants Officers deny that the allegations in this Paragraph are directed at them. To the extent that the allegations are directed against the individually named Defendant Officers, Defendant Officers deny the allegations in this Paragraph.

62.     As a result of the City of Chicago's established practice of not tracking and identifying police officers who are repeatedly accused of the same kinds of serious misconduct, failing to investigate cases in which the police are implicated in a wrongful charge or conviction, failing to discipline officers accused of serious misconduct, and facilitating a code of silence within the Chicago Police Department, officers (including Defendants here) have come to believe that they may violate the civil rights of members of the public and cause innocent persons to be charged with serious crimes without fear of adverse consequences. As a result of these policies and practices of the City of Chicago, members of the Chicago Police Department act with impunity when they violate the constitutional and civil rights of citizens.

**ANSWER:**     Defendants Officers deny that the allegations in this Paragraph are directed at them. To the extent that the allegations are directed against the individually named Defendant Officers, Defendant Officers deny the allegations in this Paragraph.

63.     This includes Defendants in this case. By way of example, Defendant Kato has a long history of engaging in the kind of investigative misconduct that occurred in this case, including coercing confessions, manipulating witnesses, fabricating evidence, and concealing evidence in the course of maliciously prosecuting innocent persons. There are dozens of known cases in which Defendant Kato has engaged in serious investigative misconduct, including many

15

cases in which Defendant Kato manipulated and coerced suspects and witnesses and fabricated and concealed evidence, as Kato and his co-defendants did in this case. Defendant Kato engaged in such misconduct because he had no reason to fear that the City of Chicago and its Police Department would ever discipline him for doing so.

**ANSWER:** Deny.

64. The City of Chicago and its Police Department also failed in the years prior to Williams' wrongful charging and conviction to provide adequate training to Chicago Police Detectives and other officers in the following areas, among others:

a. The need to refrain from physical and psychological abuse, and manipulative and coercive conduct, in relation to suspects and witnesses, and young or otherwise vulnerable persons in particular.

b. The need to accurately report, record, maintain, and review evidence to ensure that false or inaccurate information was not provided to state prosecutors.

c. The constitutional requirement to disclose exculpatory evidence, including how to identify such evidence and what steps to take when exculpatory evidence has been identified to ensure that the evidence is made part of the criminal proceeding.

d. The risks of engaging in tunnel vision during investigation.

e. The need for full disclosure, candor, and openness on the part of all officers who participate in the police disciplinary process, both as witnesses and as accused officers, and the need to report misconduct committed by fellow officers.

**ANSWER:** Deny.

65. The need for police officers to be trained in these areas was and remains obvious. The City's failure to train Chicago Police Officers as alleged in the preceding paragraph

16

proximately caused Plaintiff's wrongful conviction and his injuries.

**ANSWER:** Deny.

66. The City's failure to train, supervise, and discipline its officers, including Defendants, condones, ratifies, and sanctions the kind of misconduct that Defendants committed against Plaintiff in this case. Constitutional violations such as those that occurred in this case are encouraged and facilitated as a result of the City's practices and *de facto* polices, as alleged above.

**ANSWER:** Deny.

67. The City of Chicago and final policymaking officials within the Chicago Police Department failed to act to remedy the patterns of abuse described in the preceding paragraphs, despite actual knowledge of the pattern of misconduct. They thereby perpetuated the unlawful practices and ensured that no action would be taken (independent of the judicial process) to remedy Plaintiff's ongoing injuries.

**ANSWER:** Deny.

68. The policies and practices described in the foregoing paragraphs were also approved by the City of Chicago policymakers, who were deliberately indifferent to the violations of constitutional rights described herein.

**ANSWER:** Deny.

### Defendant Kato's History of Using Force and Other Coercive Tactics During Interrogations

69. As a result of the policies and practices of the Chicago Police Department, described above, Defendant Kato has framed dozens of other innocent men over the span of two decades. Like Plaintiff, these men have all lodged independent accusations of similar misconduct against him.

**ANSWER:** Deny.

70. Defendant Kato has a long history of engaging in precisely the kind of investigative misconduct that occurred in this case, including abusive tactics, manipulation of witnesses, fabrication of evidence, and concealment of evidence in the course of maliciously prosecuting innocent persons. In addition to the cases in which individuals have been exonerated, there are dozens of other identified cases in which Defendant Kato has engaged in serious investigative misconduct.

**ANSWER:** Deny.

71. Given this extensive history of misconduct and the City of Chicago's failure to meaningfully discipline Defendant Kato and others, it is apparent that Defendant Kato engaged in such misconduct because he had every reason to believe that the City of Chicago and its Police Department condoned his conduct.

**ANSWER:** Deny.

72. Examples of Defendant Kato's misconduct include:

a. In 1988, Detective Kato slapped and kicked Frederick Seaton, and held him for more than 30 hours until he gave a statement. Though Kato's treatment of Seaton was later declared unlawful, the City of Chicago did nothing in response.

b. In 1988, Detective Kato beat Gregory Shelton, by slapping and kicking him; holding him overnight and for more than 24 hours; denying him access to food and an attorney; and by telling him that the abuse would only stop if he confessed.

c. In 1988, Kevin Murry was interrogated for over 24 hours before he confessed. During that period of time, he was struck by Defendant Kato and denied access to food, bathroom, and an attorney.

d.      Also in 1988, Detective Kato beat Tony Bey (aka tony Steward), including by putting a gun in Bey's mouth, all to get him to falsely confess to a murder, of which he was later acquitted at trial.

e.      In 1988, Detective Kato beat Jerry Butler after illegally arresting him without a warrant and kicked and punched him in the chest, all in an unsuccessful attempt to get him to falsely confess.

f.      In the course of a robbery interrogation, Defendant Kato punched suspect Auby Christian in the chest in 1988.

g.      Keith Washington was physically abused by Detective Kato in 1989, when he was interrogated overnight and for more than 24 hours. Detective Kato punched him in the chest, choked him, and denied him access to the bathroom and food. As a result, Washington gave a confession.

h.      During a 1989 interrogation, Detective Kato punched and kicked Shawn Hardy in an attempt to get him to confess.

i.      In 1989, Detective Kato, and others, held Miller Holston overnight during the course of an interrogation lasting more than 20 hours where they struck and kicked him during the interrogation. The charges against Holston were later dismissed.

j.      Harold Lucas was only 15 when, in 1989, Defendant Kato accused him of murder, interrogated him, punched and slapped him, and even wounded his genitals all in an effort to secure a confession.

k.      In 1990, Detective Kato beat Randall and Christopher Haywood by kicking and punching them, all in an attempt to get them to provide confessions and other

19

inculpatory statements.

l.    Also in 1990, Detective Kato attempted to obtain a false confession from Daniel Gasca, despite the fact that Gasca was in custody at the time of the crime. To do so, Detective Kato struck him 12-15 times in the head, throat, and chest, and held him for more than 15 hours.

m.    In the same investigation, Detective Kato beat Michael Waslewski by kicking and punching him, until Waslewski made a false confession, including having committed the crime with Gasca even though that was physically impossible.

n.    Willie Smith, who suffered from diabetes, was interrogated for a murder in 1992, during which Detective Kato withheld insulin from Mr. Smith to force him to sign a false confession. After the confession was tossed, the charges against Smith were dropped.

o.    In 1993, Detective Kato punched Aaron Douglas in the face several times in an effort to get him to confess.

p.    Andre Wallace was just 15 when, in 1994, Detective Kato beat him by holding him overnight, squeezing his gentiles, promising him leniency, and obtained a false confession.

q.    In 1996, Esekiel McDaniel was taken to Area 4 in the middle of the night where Detective Kato slapped and threatened him during an overnight interrogation.

r.    Yet another juvenile, Xavier Johnson who was 16 at the time, was interrogated by Detective Kato in 1997, during which Kato kicked and kneed Johnson, and fabricated a confession.

s.    Keith Mitchell was interrogated more than the course of three days in 1997 and

physically abused by Detective Kato with elbows, knees, and other threats, all in an effort to have him provide a false witness statement to a murder that Mitchell did not actually witness.

t. James Guyton was arrested and interrogated more than the course of 24 hours, during which he was slapped by Detective Kato, among other things.

u. In 2002, Detective Kato beat a severely mentally ill man, Carl Chatman, into providing a false confession. Kato beat him and then tried to hide his name on official documents.

v. In 2003, Deunsha Woods was held and interrogated over the course of three days, during which Detective Kato repeatedly punched, threatened, and even choked Mr. Woods.

**ANSWER:** Defendant Kato denies the allegations in this paragraph, including subparagraphs a through v. Defendant Cirone denies the allegations in subparagraphs r and u. Defendant Cirone and the other Defendant Officers lack knowledge sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

73. The City of Chicago is well aware of the pattern with respect to Detective Kato. Indeed, the City has received formal complaints to Kato's abuse of Tony Bey (Tony Steward), Jerry Butler, Auby Christian, Keith Washington, Shawn Hardy, Miller Holston, Harold Lucas, Randall Haywood, Christopher Haywood, Willie Smith, Aaron Douglas, Andre Wallace, Xavier Johnson, Keith Mitchell, James Guyton, Carl Chatman, Deunsha Woods, and others. Courts have also concluded that Detective Kato's conduct was unconstitutional. In addition, the Illinois Torture Inquiry Commission found that Kevin Murray had stated a credible claim of torture against Kato. Nonetheless, exhibiting its deliberate indifference, the City of Chicago has never done nothing in response to this systemic misconduct.

**ANSWER:** Defendant Kato denies any pattern of misconduct. Defendant Officers admit CPD received complaints and initiated C.R. investigations in which allegations were

made against Defendant Kato. Defendant Officers are without knowledge as to the vague reference to "courts" in the second sentence of paragraph 72 and are therefore without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in that sentence. Defendant Officers are without information sufficient to form a belief as to the truth or falsity of the Illinois Torture Inquiry Commission's statements in Kevin Murray's case. The Defendant Officers make no answer to the allegations contained in this paragraph that are directed at Defendant City of Chicago.

74. As the examples above demonstrate, the City of Chicago failed to meaningfully discipline Defendant Kato or other officers engaged in similar misconduct. Defendants engaged in the misconduct set forth in this Complaint because they knew that the City of Chicago and its Police Department tolerated and condoned such conduct.

**ANSWER:** The Defendant Officers deny they engaged in any misconduct and therefore deny the allegations in this Paragraph.

### Williams's Wrongful Conviction

75. As a result of Defendant's misconduct, Williams was charged and prosecuted for the murder of Thomas. He was convicted at a bench trial in 1998. The judge sentenced him to 80 years in prison.

**ANSWER:** Defendant Officers admit that Plaintiff was charged and prosecuted for the murder of Thomas, was convicted at a bench trial in 1998, and was sentenced to 80 years in prison. Defendant Officers deny the remaining allegations in this Paragraph.

76. Only Defendants' fabricated evidence was used against Williams at trial.

**ANSWER:** Deny.

77. There was no physical evidence tying Williams to the crime. No fingerprints, DNA, or any other forensic evidence ever linked Williams to the shooting.

**ANSWER:** Defendant Officers admit there was no fingerprint, DNA or forensic evidence introduced at trial against Plaintiff.

78. In fact, there was never any probable cause to believe that Williams was involved in the murder either before or after any of the Defendants' misconduct.

22

**ANSWER:** Deny.

79. Without Defendants' misconduct described above, Williams would not have been prosecuted or convicted.

**ANSWER:** Deny.

80. Williams was 17 years old when he was arrested. He spent more than 23 years of his life incarcerated for a crime that he did not commit.

**ANSWER:** Defendant Officers admit that Plaintiff claimed to be 17 years old when he was arrested. Defendant Officers are currently without information to form a belief as to the truth and correctness of the exact amount of time Plaintiff was incarcerated. Defendant Officers deny the remaining allegations in this Paragraph.

81. Williams' whole life was turned upside down without any warning. His young adulthood was consumed by the horror of his wrongful imprisonment.

**ANSWER:** Defendant Officers deny Plaintiff was wrongfully imprisoned. Defendant Officers are without information to form a belief as to the truth or falsity of the remaining allegations in this Paragraph.

82. Because of Defendants' misconduct, Williams was taken away from, and missed out on, the lives of his family and friends. He missed out on the ability to share holidays, births, and other life events with loved ones.

**ANSWER:** Defendant Officers deny their actions were the cause of Plaintiff's loss. Defendant Officers are without information to form a belief as to the truth or falsity of the remaining allegations in this Paragraph.

83. Significantly, Williams missed out on raising his son, who was only 9 months old when Williams was wrongfully incarcerated. He also missed out on spending time with loved ones who passed away, including his grandmother and other close uncles, and not being able to attend their funerals.

**ANSWER:** Defendant Officers deny Plaintiff was wrongfully incarcerated. Defendant Officers are without information to form a belief as to the truth or falsity of the remaining allegations in this Paragraph.

23

84.     Plaintiff was robbed of his opportunity to gain an education, to start a family, to engage in meaningful labor, to develop a career, and to pursue his interests and passions.

**ANSWER:**     Deny.

85.     During his roughly quarter-century long wrongful imprisonment, Williams was detained in harsh and dangerous conditions in maximum-security prisons.

**ANSWER:**     Defendant Officers deny Plaintiff was wrongfully incarcerated. Defendant Officers are without information to form a belief as to the truth or falsity of the remaining allegations in this Paragraph.

86.     In February 2019, Williams' conviction was vacated by the Illinois Appellate Court.

**ANSWER:**     Admit.

87.     In August 2023, he was acquitted of all charges against him.

**ANSWER:**     Defendant Officers admit that Plaintiff was found not guilty of the murder charges against him in August 2023 but deny that Plaintiff was acquitted of "all charges against him" in August 2023.

88.     Williams must now attempt to make a life for himself outside of prison without the benefit of the foundational life experiences which people normally develop throughout their formative teenage and young-adult years.

**ANSWER:**     Defendant Officers are without information to form a belief as to the truth or falsity of the remaining allegations in this Paragraph.

89.     In addition to the trauma of wrongful imprisonment and Williams' loss of liberty, Defendants' misconduct continues to cause him extreme physical and psychological pain and suffering, humiliation, constant fear, nightmares, anxiety, depression, despair, rage, and other physical and psychological effects. Plaintiff has been branded a murderer. He has suffered profound reputational harm as a result.

**ANSWER:**     Defendant Officers are without information to form a belief as to the truth or falsity as to the allegations about Plaintiff's brand or reputation. Defendant

24

Officers deny the remaining allegations in this Paragraph.

## COUNT I – 42 U.S.C. § 1983
### Due Process (Fourteenth Amendment)

90.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here. In the manner described more fully above, Defendants, while acting individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial.

**ANSWER:**    Defendant Officers deny they deprived Plaintiff of any constitutional rights. Answering further, Defendant Officers incorporate and restate their Answers to each Paragraph of this Complaint as is fully set forth herein.

91.     In the manner described more fully above, Defendants deliberately withheld exculpatory and impeachment evidence from Plaintiff and from prosecutors, among others, thereby misleading and misdirecting Plaintiff's criminal prosecution.

**ANSWER:**    Deny.

92.     Defendants also fabricated and manufactured evidence and solicited false evidence, fabricated police reports falsely implicating Plaintiff in the crime and stating falsely that Plaintiff confessed to the crime, obtained Plaintiff's conviction using that false evidence, and failed to correct fabricated evidence that they knew to be false when it was used against Plaintiff during his criminal case.

**ANSWER:**    Deny.

93.     Defendants also used illegal interrogation tactics in an attempt to extract involuntary statements from Plaintiff, which Defendants attempted to use to incriminate Plaintiff during his criminal proceedings and to secure his conviction.

**ANSWER:**    Deny.

94. In addition, Defendants suppressed evidence that would have demonstrated Plaintiff's innocence.

**ANSWER:** Deny.

95. In addition, based upon information and belief, Defendants concealed and fabricated additional evidence that is not yet known to Plaintiff.

**ANSWER:** Deny.

96. Defendants' misconduct described in this count resulted in Plaintiff's unjust and wrongful criminal prosecution and conviction, deprived him of his liberty, caused statements extracted from him involuntarily to be used to incriminate him, and denied him his constitutional right to a fair trial guaranteed by the Fourteenth Amendment.

**ANSWER:** Deny.

97. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's innocence.

**ANSWER:** Deny.

98. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages set forth above.

**ANSWER:** Deny.

99. The misconduct described in this Count by Defendants was undertaken pursuant to the policy and practice of the Chicago Police Department, in the manner more fully described below in Count V.

**ANSWER:** Deny.

## COUNT II – 42 U.S.C. § 1983
### Illegal Detention
### (Fourth and Fourteenth Amendments)

100.   Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:**   Defendant Officers incorporate and restate their Answers to each Paragraph of this Complaint as is fully set forth herein.

101.   In the manner described more fully above, Defendants, while acting individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, used false evidence that they had manufactured in order to accuse Plaintiff of criminal activity and to cause the institution and continuation of criminal proceedings against Plaintiff, without probable cause.

**ANSWER:**   Deny.

102.   In so doing, Defendants caused Plaintiff to be detained without probable cause, in violation of his rights secured by the Fourth and Fourteenth Amendments.

**ANSWER:**   Deny.

103.   These Defendants initiated and continued judicial proceedings against Plaintiff maliciously, resulting in injury.

**ANSWER:**   Deny.

104.   After 23 years, an Illinois Appellate Court vacated Plaintiff's conviction. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's innocence.

**ANSWER:**   Defendant Officers admit that an Illinois Appellate Court vacated Plaintiff's conviction in 2019. Defendant Officers deny the remaining allegations in this Paragraph.

27

105.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages set forth above.

**ANSWER:**    Deny.

106.    The misconduct described in this Count by Defendants was undertaken pursuant to the policy and practice of the Chicago Police Department, in the manner more fully described below in Count V.

**ANSWER:**    Deny.

## COUNT III – 42 U.S.C. § 1983
### Failure to Intervene

107.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:**    Defendant Officers incorporate and restate their Answers to each Paragraph of this Complaint as is fully set forth herein.

108.    In the manner described above, during the constitutional violations described herein, one or more of the Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so.

**ANSWER:**    Deny.

109.    As result of Defendants' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered injuries, including but not limited to loss of liberty and physical and emotional distress. Defendants had ample, reasonable opportunities to prevent this harm but failed to do so.

**ANSWER:**    Deny.

110.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's innocence.

28

**ANSWER:**     Deny.

111.     As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages set forth above.

**ANSWER:**     Deny.

112.     The misconduct described in this Count by Defendants was undertaken pursuant to the policy and practice of the Chicago Police Department, in the manner more fully described below in Count V.

**ANSWER:**     Deny.

### COUNT IV – 42 U.S.C. § 1983
### Conspiracy to Deprive Constitutional Rights

113.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:**     Defendant Officers incorporate and restate their Answers to each Paragraph of this Complaint as is fully set forth herein.

114.     Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime he did not commit and thereby to deprive him of his constitutional rights, as described in the various paragraphs of this Complaint.

**ANSWER:**     Deny.

115.     In so doing, these co-conspirators conspired to accomplish an unlawful purpose by unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

**ANSWER:**     Deny.

116.     In furtherance of this conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

**ANSWER:**    Deny.

117.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's innocence.

**ANSWER:**    Deny.

118.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages set forth above.

**ANSWER:**    Deny.

119.    The misconduct described in this Count by Defendants was undertaken pursuant to the policy and practice of the Chicago Police Department, in the manner more fully described below in Count V.

**ANSWER:**    Deny.

### COUNT V – 42 U.S.C. § 1983
### Policy and Practice Claim Against the City of Chicago

120.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:**    Defendant Officers incorporate and restate their Answers to each Paragraph of this Complaint as is fully set forth herein.

121.    As described more fully herein, the City of Chicago is liable for the violation of Plaintiff's constitutional rights by virtue of its official policies.

**ANSWER:**    Defendant Officers make no answer to the allegations contained in this Paragraph that are not directed toward the Defendant Officers. Defendant Officers deny the remaining allegations in this Paragraph.

122.    Plaintiff's injuries were caused by the express policies, absence of needed express policies, and widespread practices and customs of the City of Chicago, as well as by the actions of policy-making officials for the City of Chicago.

30

**ANSWER:** Defendant Officers make no answer to the allegations contained in this Paragraph that are not directed toward the Defendant Officers. Defendant Officers deny the remaining allegations in this Paragraph.

123. At all times relevant to the events described in this Complaint and for a period of time prior and subsequent thereto, the City of Chicago failed to promulgate proper or adequate rules, regulations, policies, and procedures for: the conduct of interrogations and questioning of criminal suspects by officers and agents of the Chicago Police Department and the City of Chicago; the collection, documentation, preservation, testing, and disclosure of evidence; writing of police reports and taking of investigative notes; obtaining statements and testimony from witnesses; and maintenance of investigative files and disclosure of those files in criminal proceedings. In addition, or alternatively, the City of Chicago failed to promulgate proper and adequate rules, regulations, policies, and procedures for the training and supervision of officers and agents of the Chicago Police Department and the City of Chicago, with respect to the conduct of interrogations and the techniques to be used when questioning criminal suspects, including juvenile suspects and witnesses.

**ANSWER:** Defendant Officers make no answer to the allegations contained in this Paragraph that are not directed toward the Defendant Officers. Defendant Officers deny the remaining allegations in this Paragraph.

124. These failures to promulgate proper or adequate rules, regulations, policies, and procedures were committed by officers and agents of the Chicago Police Department and the City of Chicago, including Defendants.

**ANSWER:** Defendant Officers make no answer to the allegations contained in this Paragraph that are not directed toward the Defendant Officers. Defendant Officers deny the remaining allegations in this Paragraph.

125. In addition, at all times relevant to the events described in this Complaint and for a period of time prior thereto, the City of Chicago had notice of a widespread practice and custom by officers and agents of the Chicago Police Department and the City of Chicago under

31

which individuals suspected of criminal activity, such as Plaintiff, were routinely implicated in a crime through involuntary and coerced statements. It was common that suspects interrogated in connection with investigations within the jurisdiction of the Chicago Police Department and the City of Chicago, such as Plaintiff's co-defendant, falsely confessed under extreme duress and after suffering abuse, to committing crimes to which they had no connection and implicated other innocent persons in the process.

**ANSWER:** Defendant Officers make no answer to the allegations contained in this Paragraph that are not directed toward the Defendant Officers. Defendant Officers deny the remaining allegations in this Paragraph.

126. Specifically, at all relevant times and for a period of time prior thereto, there existed a widespread practice and custom among officers, employees, and agents of the City of Chicago, under which criminal suspects and witnesses were coerced to involuntarily implicate themselves and others and to provide plainly false statements by various means, including but not limited to: (1) individuals were subjected to unreasonably long and uninterrupted interrogations, often lasting for many hours and even days; (2) individuals were subjected to actual and threatened physical or psychological violence; (3) individuals were interrogated at length without proper protection of their constitutional right to remain silent; (4) individuals were forced to sign or assent to oral and written statements fabricated by the police; (5) officers and employees were permitted to lead or participate in interrogations without proper training and without knowledge of the safeguards necessary to ensure that individuals were not subjected to abusive conditions and did not confess involuntarily and/or falsely; and (6) supervisors with knowledge of permissible and impermissible interrogation techniques did not properly supervise or discipline police officers and employees such that the coercive interrogations continued unchecked.

**ANSWER:** Defendant Officers make no answer to the allegations contained in this Paragraph that are not directed toward the Defendant Officers. Defendant Officers deny the remaining allegations in this Paragraph.

127. In addition, at all times relevant to the events described in this Complaint and for a period of time prior thereto, the City of Chicago had notice of widespread practices by officers and agents of the Chicago Police Department and the City of Chicago, which included one or more of the following: (1) officers did not record investigative information in police reports, did not maintain proper investigative files, and/or did not disclose investigative materials to prosecutors and criminal defendants; (2) officers falsified statements and testimony of witnesses; (3) officers fabricated police reports and other false evidence implicating criminal defendants in criminal conduct; (4) officers failed to maintain and/or preserve evidence and/or destroyed evidence; and/or (5) officers pursued wrongful convictions through profoundly flawed investigations.

**ANSWER:** Defendant Officers make no answer to the allegations contained in this Paragraph that are not directed toward the Defendant Officers. Defendant Officers deny the remaining allegations in this Paragraph.

128. These widespread practices, individually and/or together, were allowed to flourish because the leaders, supervisors, and policymakers of the City of Chicago directly encouraged and were thereby the moving force behind the very type of misconduct at issue by failing to adequately train, supervise, and control their officers, agents, and employees on proper interrogation and investigation techniques and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses such as those affecting Plaintiff.

**ANSWER:** Defendant Officers make no answer to the allegations contained in this Paragraph that are not directed toward the Defendant Officers. Defendant Officers deny the remaining allegations in this Paragraph.

129. The above widespread practices and customs, so well settled as to constitute *de facto* policies of the City of Chicago, were able to exist and thrive, individually and/or together, because policymakers with authority over the same exhibited deliberate indifference to the

problem, thereby effectively ratifying it.

**ANSWER:** Defendant Officers make no answer to the allegations contained in this Paragraph that are not directed toward the Defendant Officers. Defendant Officers deny the remaining allegations in this Paragraph.

130.    As a result of the policies and practices of the City of Chicago and the Chicago Police Department, numerous individuals have been wrongly convicted of crimes that they did not commit.

**ANSWER:** Defendant Officers make no answer to the allegations contained in this Paragraph that are not directed toward the Defendant Officers. Defendant Officers deny the remaining allegations in this Paragraph.

131.    In addition, the misconduct described in this Count was undertaken pursuant to the policies and practices of the City of Chicago in that the constitutional violations committed against Plaintiff were committed with the knowledge or approval of persons with final policymaking authority for the City of Chicago or were actually committed by persons with such final policymaking authority.

**ANSWER:** Defendant Officers make no answer to the allegations contained in this Paragraph that are not directed toward the Defendant Officers. Defendant Officers deny the remaining allegations in this Paragraph.

132.    Plaintiff's injuries were directly and proximately caused by officers, agents, and employees of the City of Chicago, including but not limited to the individually named Defendants, who acted pursuant to one or more of the policies, practices, and customs set forth above in engaging in the misconduct described in this Count.

**ANSWER:** Defendant Officers make no answer to the allegations contained in this Paragraph that are not directed toward the Defendant Officers. Defendant Officers deny the remaining allegations in this Paragraph.

## COUNT VI – State Law Claim Malicious Prosecution

133.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:** Defendant Officers incorporate and restate their Answers to each Paragraph of

34

this Complaint as is fully set forth herein.

134.    In the manner described above, Defendants, while acting individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate and to continue and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent.

**ANSWER:**    Deny.

135.    In so doing, these Defendants caused Plaintiff to be subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

**ANSWER:**    Deny.

136.    An Illinois Appellate Court vacated Plaintiff's conviction.

**ANSWER:**    Admit.

137.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, and in total disregard of the truth and Plaintiff's innocence.

**ANSWER:**    Deny.

138.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:**    Deny.

### COUNT VII – State Law Claim Intentional Infliction of Emotional Distress

139.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:**    Defendant Officers incorporate and restate their Answers to each Paragraph of

35

this Complaint as is fully set forth herein.

140. The actions, omissions, and conduct of Defendants, acting as investigators and as set forth above, were extreme and outrageous.

**ANSWER:** Deny.

141. These actions were rooted in an abuse of power and authority and were undertaken with the intent to cause or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff, as is more fully alleged above.

**ANSWER:** Deny.

142. As a result of Defendants' misconduct described in this Count, Plaintiff suffered and continues to suffer emotional distress and other grievous and continuing injuries and damages set forth above.

**ANSWER:** Deny.

## COUNT VIII – State Law Claim Civil Conspiracy

143. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:** Defendant Officers incorporate and restate their Answers to each Paragraph of this Complaint as is fully set forth herein.

144. As described more fully in the preceding paragraphs, the Defendants, acting in concert with other known and unknown co-conspirators, reached an agreement among themselves to frame Plaintiff for a crime he did not commit and conspired by concerted action to accomplish an unlawful purpose by unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

**ANSWER:** Deny.

145. The violations of Illinois law described in this Complaint, including Defendants' malicious prosecution of Plaintiff and their intentional infliction of emotional distress, were

36

accomplished by Defendants' conspiracy.

**ANSWER:**    Deny.

146.    The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, and in total disregard of the truth and Plaintiff's innocence.

**ANSWER:**    Deny.

147.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages set forth above.

**ANSWER:**    Deny.

### COUNT IX – State Law Claim
### *Respondeat Superior*

148.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:**    Defendant Officers incorporate and restate their Answers to each Paragraph of this Complaint as is fully set forth herein.

149.    In committing the acts alleged in the preceding paragraphs, Defendants were employees of the City of Chicago and the Chicago Police Department, acting at all relevant times within the scope of their employment and under color of law.

**ANSWER:**    Defendant Officers make no answer to the allegations contained in this Paragraph that are not directed toward the Defendant Officers. Defendant Officers admit that at the times relevant to this Complaint, they were employees of the City of Chicago and the Chicago Police Department and acting within the scope of their employment and under color of law, but deny that they committed acts as described in this Complaint. Defendant Officers deny the remaining allegations in this Paragraph.

150.    Defendant City of Chicago is liable as principal for all torts committed by its agents.

**ANSWER:**    Defendant Officers make no answer to the allegations contained in this Paragraph that are not directed toward the Defendant Officers. Defendant Officers admit that under certain circumstances, the City of Chicago as principle can be held liable

37

for torts committed by its agents, but denies any torts were committed in this case and denies any misconduct occurred.

## COUNT X – State Law Claim Indemnification

151. Plaintiff incorporates each paragraph of this Complaint as if fully restated here. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

**ANSWER:** Defendant Officers make no answer to the allegations contained in this Paragraph that are not directed toward the Defendant Officers. Answering further, Defendant Officers incorporate and restate their Answers to each Paragraph of this Complaint as is fully set forth herein.

152. Defendants are or were employees of the Chicago Police Department, an agency of the City of Chicago, who acted within the scope of their employment in committing the misconduct described above.

**ANSWER:** Defendant Officers make no answer to the allegations contained in this Paragraph that are not directed toward the Defendant Officers. Defendant Officers admit that they are or were employees of the Chicago Police Department, which is an agency of the City of Chicago, and acted within the scope of their employment during times relevant to this Complaint, but deny that they committed the misconduct as alleged in this Complaint.

153. The City is liable to indemnify any compensatory judgment awarded against Defendants.

**ANSWER:** Defendant Officers make no answer to the allegations contained in this Paragraph that are not directed toward the Defendant Officers.

WHEREFORE, Defendant Officers pray this Court enter judgment in their favor and against Plaintiff. Defendant Officers demand trial by jury.

## AFFIRMATIVE DEFENSES TO ALL COUNTS

NOW COME Defendant Officers, and for their Affirmative Defenses, state as follows:

## QUALIFIED IMMUNITY

At all times during the events alleged in Plaintiff's Complaint, a reasonable police officer, objectively viewing the facts and circumstances then confronting the Defendant Officers at issue during the incident which allegedly provides the basis for the present case, could have reasonably believed that the actions taken by them were objectively reasonable and were within constitutional limits that were clearly established at the time. Defendant Officers are, therefore, entitled to qualified immunity.

## ABSOLUTE IMMUNITY

To the extent any Count in this Complaint purports to attempt to impose liability on any Defendant Officer relating to acts of perjury or false testimony of any kind, or failure to testify or disclose the true nature of the circumstances leading up to Plaintiff's arrest or prosecution, Defendant Officers are absolutely immune from liability pursuant to federal and state law immunities. *Briscoe v. Lahue,* 460 U.S. 325 (1983); *Jurgenson v. Haslinger*, 295 Ill. App. 3d 139 (3d Dist. 1998).

## FAILURE TO MITIGATE

To the extent Plaintiff failed to mitigate any of his claimed injuries or damages, any verdict or judgment obtained by Plaintiff must be reduced by application of the principle that Plaintiff has a duty to mitigate, commensurate with the degree of failure to mitigate attributed to Plaintiff by the jury in this case.

## COMPARATIVE OR CONTRIBUTORY FAULT

To the extent any injuries or damages claimed by Plaintiff were proximately caused, in whole or in part, by the negligent, willful, wanton and/or other wrongful conduct on the part of the Plaintiff, any verdict or judgment obtained by Plaintiff must be reduced by application of the

principles of comparative fault, by an amount commensurate with the degree of fault attributed to Plaintiff by the jury in this cause.

## STATUTE OF LIMITATIONS ON FEDERAL CLAIMS

To the extent any of Plaintiff's claims arising under 42 U.S.C. § 1983 accrued more than two years prior to the institution of this suit, Plaintiff's claims are barred by the applicable statute of limitations.

## 745 ILL. COMP. STAT. 10/2-208

1.     At all times relevant to this suit, Defendant Officers were acting within the scope of their employment as police officers employed by the CITY OF CHICAGO.

2.     Defendant Officers did not act maliciously and/or willfully or wantonly or without probable cause.

3.     Accordingly, Defendant Officers are not liable for any injury caused by instituting or prosecuting any judicial proceeding within the scope of their employment pursuant to 745 Ill. Comp. Stat. 10/2-208.

## 745 ILL. COMP. STAT. 10/2-204

1.     At all times relevant to this suit, Defendant Officers were acting within the scope of their employment as police officers employed by the CITY OF CHICAGO.

2.     To the extent any Count in this Complaint seeks recovery based on acts or omissions of another person, Defendant Officers are immune from suit pursuant to 745 Ill. Comp. Stat. 10/2-204.

## 745 ILL. COMP. STAT. 10/8-101(a)

To the extent any Count in this Complaint seek recovery under state law for any acts or omissions of a local public entity or any of its employees accruing more than one year prior to

40

the filing of this suit, such local public entity or employee thereof is immune from suit pursuant to 745 Ill. Comp. Stat. 10/8-101(a).

## 735 ILL. COMP. STAT. 5/13-202

To the extent any Count in this Complaint seeks recovery under state law for any acts or omissions not within the scope of actions subject to the statute of limitations set forth in 745 Ill. Comp. Stat. 10/8-101(a), any of Plaintiff's claims accruing more than two years previous to the filing of this suit are barred by 735 Ill. Comp. Stat. 5/13-202.

## 745 ILL. COMP. STAT. 10/2-201

At certain times relevant to this suit, Defendant Officers were performing discretionary acts within the scope of their employment pursuant to 745 Ill. Comp. Stat. 10/201 and thus are immune from suit.

## 745 ILL. COMP. STAT. 10/2-210

To the extent the acts alleged are held to constitute a negligent misrepresentation or provision of information by Defendant Officers, Defendant Officers are immune from suit as public employees acting in the scope of employment pursuant to 745 Ill. Comp. Stat. 10/2-210.

## 745 ILL. COMP. STAT. 10/2-202

1. Certain acts or omissions at issue in this case were taken by a public employee and constituted the execution or enforcement of a law.

2. In so acting, defendant officers did not act in a manner constituting willful or wanton conduct or without probable cause.

3. Accordingly, Defendant Officers are immune from suit pursuant to 745 Ill. Comp. Stat. 10/2-202.

41

### 745 ILL. COMP. STAT. 10/2-205 AND 745 ILL. COMP. STAT. 10/2-103

To the extent any Count in this Complaint seeks recovery based on an injury relating to a failure to enforce the law, Defendant Officers are immune from suit pursuant to 745 Ill. Comp. Stat. 10/2-205.

### 745 ILL. COMP. STAT. 10/2-212

To the extent that any Count in this Complaint seeks recovery based on joint action between public employees, Defendants Officers are immune from suit pursuant to 745 Ill. Comp. Stat. 10/2-212.

### 745 ILL. COMP. STAT. 10/4-104

To the extent any Count in this Complaint seeks recovery based on an injury relating to any interference with the right of a prisoner to obtain a judicial determination or review of the legality of his confinement, Defendant Officers are not liable for such injuries pursuant to 745 Ill. Comp. Stat. 10/4-104.

### 735 ILL. COMP. STAT. 5/13-209

Plaintiff's claims against the Estate of Risley are barred by 735 Ill. Comp. Stat. 5/13-209(b)(1) because more than six months passed between his death and the naming of the Estate in this suit.

### 735 ILL. COMP. STAT. 5/13-209

Any recovery or award of damages against deceased person, Sgt. J. Risley, is limited by Illinois law. 735 ILCS 5/13-209(b)(2).

### 735 ILL. COMP. STAT. 5/18-12

Because Plaintiff filed suit against Risley's Estate more than two years after his death, Plaintiff's claims against Risley's Estate are barred by 735 ILCS 5/18-12(b).

**735 ILL. COMP. STAT. 5/13-209**

To the extant any of Plaintiff's claims accrued more than six months after the death of Sgt. J. Risley, Plaintiff's claims are barred by the applicable statute of limitations. 735 ILCS 5/13-209(b)(1).

**UNCONSTITUTIONALITY OF PUNITIVE DAMAGE AWARD, IF ANY**

An award of punitive damages would deprive Defendant Officers of due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution where liability for punitive damages has not been proven beyond a reasonable doubt or at least by clear and convincing evidence, or where the award of punitive damages is disproportionate to actual damages.

**COLLATERAL ESTOPPEL/RES JUDICATA**

Certain issues and claims in Plaintiff's Complaint were adjudicated during Plaintiff's criminal proceedings, and are therefore barred from re-litigation here under the doctrines of collateral estoppel and *res judicata*.

WHEREFORE Defendants Officers deny that Plaintiff is entitled to judgment in the sum claimed or in any sum of money whatever and ask that judgment be entered in their favor and against plaintiff with costs. Defendant Officers demand a trial by jury.

Respectfully submitted,

BORKAN & SCAHILL, LTD.

By:/s/ *Graham P. Miller*
Graham P. Miller

Steven B. Borkan
Timothy P. Scahill
Graham P. Miller
Misha Itchhaporia
Christiane E. Murray
Special Assistants Corporation Counsel

43

BORKAN & SCAHILL, LTD.
Two First National Plaza
20 South Clark Street, Suite 1700
Chicago, Illinois 60603
(312) 580-1030
*Attorneys for Kato, Cirone, Sawaczenko,*
*Farrell, Chasen, Rawski, and Risley*