# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BERNARD WILLIAMS, | ) |
| | ) |
| *Plaintiff*, | ) Case No. 1:21-cv-819 |
| | ) |
| v. | ) |
| | ) Hon. Sunil R. Harjani, |
| KRISTON KATO, SAMUEL CIRONE, | ) District Judge |
| PATRICIA SAWCZENKO, JOHN | ) |
| FARRELL, SERGEANT CHASEN, M. | ) |
| CRONIN (Star No. 15490), J. RAWSKI | ) Hon. Heather K. McShain, |
| (Star No. 3556), PAMELA RISLEY, as | ) Magistrate Judge |
| special representative of SERGEANT J. | ) |
| RISLEY (Star No. 975), UNKNOWN | ) |
| EMPLOYEES of the CITY OF | ) |
| CHICAGO, and the CITY OF | ) **JURY TRIAL DEMANDED** |
| CHICAGO, | ) |
| | ) |
| *Defendants*. | |

**PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT**

**INTRODUCTION**

After years of litigation, the parties agreed to resolve this matter for a total payment of $7.5 million. That agreement was memorialized in an executed settlement release. The City subsequently enacted an ordinance expressly approving the $7.5 million settlement payout.

Despite that clear agreement, the City now takes the position that it will pay only $7.493 million, asserting that nearly $7,000 should be withheld to satisfy unrelated debt the City claims Plaintiff owes. To justify this unilateral reduction, the City relies on a general municipal ordinance that purports to authorize setoffs against settlement payments owed by the City. In effect, the City now contends that, although it agreed to pay $7.5 million to settle this lawsuit, a preexisting City rule was lurking in the background and permits it to pay something less. The City takes this position despite making *absolutely no mention* of set off *at any point* during the litigation of this case or settlement negotiations. By insisting on applying a setoff that it never disclosed or negotiated, the City invites a finding that the parties did not reach agreement on all material terms, thereby jeopardizing the settlement entirely.

The City's position has led to a straightforward dispute: must the City honor the settlement it entered into, or may it unilaterally alter a core term of that agreement based on one of its own ordinances that directly contradicts the settlement's express terms? The answer is equally straightforward. The City must pay the full $7.5 million.

Several independent grounds lead to this conclusion. First, having agreed to settle the case for a defined sum, basic contract principles require the City to pay the full amount. Second, the City never pleaded setoff as an affirmative defense—despite doing so in other cases—and never raised it during settlement negotiations—again, despite doing so in other cases. This issue is thus waived. Third, even if the Court were inclined to consider any municipal ordinances (which it need

2

not, given the unambiguous language of the settlement agreement), the general setoff ordinance cannot supersede the specific ordinance approving the $7.5 million settlement in this case—particularly because the settlement ordinance was enacted more recently. Under settled interpretive principles, the specific and later-adopted ordinance controls.

Finally, due process concerns underscore the impropriety of the City's position. Plaintiff is entitled to adequate process regarding any alleged debt, and the City's setoff ordinance—lacking any governing rules or procedures—raises serious constitutional questions. Plaintiff does not waive those arguments, but the Court need not reach them now, as the settlement agreement alone resolves this dispute.

## RELEVANT FACTUAL HISTORY

On January 14, 2025, the parties participated in a settlement conference and agreed to resolve the case for $7.5 million. Dkt. 123. Exactly six months after agreeing to the $7.5 million settlement, counsel for the City notified Plaintiff's counsel that the City intended to reduce the settlement payment by $6,603.48 under Municipal Code Section 1-19-040 based on an alleged debt the City claimed Plaintiff owed. Ex. 1 at 2. Plaintiff promptly responded, explaining that he opposed any offset because: (1) the issue was never raised at any point during the litigation; (2) it was never raised during settlement negotiations and was not included in the final settlement agreement; (3) the Comptroller lacks authority to alter or override a binding agreement approved by the parties and by ordinance; and (4) the City's attempt to collect purported debts through this method appears to bypass legally required procedures and raises serious due process concerns. *Id.* at 1. The parties conferred extensively regarding the City's proposed offset, but the City has refused to remove it. Ex. 2 at 1-2.

3

**ARGUMENT**

The parties to this civil action agreed to a $7.5 million settlement. The City is not free to unilaterally alter the terms of that agreement—particularly in a manner that provides Plaintiff no due process.

**I.     The written settlement documents preclude the City's attempted setoff**

After reaching agreement at the settlement conference, the parties reduced their agreement to writing in a release that all parties, including Plaintiff, were required to sign before payment would issue. That release constitutes a binding contract. It contains no reference to the ordinance the City now invokes as a basis to withhold a portion of the settlement. Ex. 3. To the contrary, the agreement includes an integration clause confirming that the written document contains the entirety of the parties' agreement. As explained below, the settlement document therefore forecloses the City's attempt to reduce the agreed-upon settlement payment.

**A.  Legal standard for interpreting written settlement agreements**

Settlement agreements are contracts and are interpreted under ordinary principles of contract law. *See, e.g., Laserage Tech. Corp. v. Laserage Laboratories, Inc.*, 972 F.2d 799, 802 (7th Cir. 1992). Here, the parties agreed that the release would be governed by Illinois law. Ex. 3 ¶ 12. "In interpreting a contract under Illinois law, the paramount objective is to give effect to the intent of the parties as expressed by the terms of the agreement." *Laserage Tech. Corp.*, 972 F.2d at 802 (citation modified).

Where, as here, a contract contains an integration clause indicating that the written document contains all agreed-upon terms, Illinois law does not permit courts to read additional implied terms into the contract. *See, e.g., Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Products, Inc.*, 212 F.3d 373, 380–81 (7th Cir. 2000).

4

Further, when a party indicates that it does not intend to fulfill its obligations under the contract, the other party may sue without waiting for the breach to occur. *Student Transit Corp. v. Bd. of Ed. of City of Chicago*, 76 Ill. App. 3d 366, 369, 395 N.E.2d 69, 71 (Ill. Ct. App. 1979) ("The letter of September 3 contained a clear and unequivocal declaration of the board's intention not to comply with the terms of the contract. The plaintiff, therefore, was correct in treating this renunciation as an anticipatory breach and proceeding with its lawsuit for damages.").

### B. The written settlement agreement expressly mandates the payment of $7.5 million

The written release explicitly sets forth the amount the City must pay Plaintiff pursuant to the settlement. Ex. 3 ¶ 5. The release also contains an integration clause stating that the release and any accompanying dismissal documents "contain the entire agreement between the parties with regard to the settlement of this action . . . ." Ex. 3 ¶ 11. The City now contends that its debt-collection ordinance should be treated as a background legal principle that implicitly forms part of the settlement agreement. Ex. 2 at 1-2. But as explained above, Illinois law does not permit courts to read implied terms into a contract that contains an integration clause. *See, e.g., Brooklyn Bagel Boys, Inc.*, 212 F.3d at 380 ("the parol evidence rule generally forbids the use in evidence of … terms not included in the Contract" when the contract contains an integration clause); *see also Sunstream Jet Exp., Inc. v. International Air Serv. Co., Ltd.*, 734 F.2d 1258, 1265 (7th Cir. 1984) (noting under Illinois law "if the contract imports on its face to be a complete expression of the whole agreement, it is presumed that the parties introduced into it every material item, and parol evidence cannot be admitted to add another term to the agreement.").

In sum, the settlement agreement unambiguously requires the City to pay $7.5 million. Nothing in the contract authorizes the City to reduce that amount on the basis of an alleged unrelated debt, nor does it grant the City authority to engage in self-help by unilaterally

5

withholding a portion of the payment without any process whatsoever. The Court should enforce the settlement and order the City to pay the full $7.5 million.

## II. Waiver principles independently bar the City from asserting any setoff

The City is likewise barred from asserting any setoff because it has waived the issue. All parties understood that the $7.5 million settlement was intended to resolve every claim and issue arising from this litigation. If the City wished to assert a right to setoff, it had multiple opportunities to do so. It could have pleaded setoff as an affirmative defense—as it has done in other wrongful conviction cases. It did not. It also could have raised setoff at any point during the years of litigation or during the settlement negotiations leading up to the agreement. Again, it did not. Instead, the City waited six months after the parties agreed to a $7.5 million settlement before raising the issue for the first time.

It is far too late for the City to invoke setoff now. Once the parties reached agreement on a specific settlement amount and reduced that agreement to a written, integrated contract, any unasserted claims relating to the settlement were waived. Under Illinois law, a settlement and agreed dismissal preclude later attempts to litigate issues that "could have been raised during the pendency of" the resolved action. *Protect Our Parks, Inc. v. Latin Sch. of Chi*., 2011 IL App (1st) 100231-U, ¶ 19. The City is well aware of how to negotiate, plead, or contract for setoff when it wishes to do so. Here, it did none of those things. Any setoff argument is thus waived.

## III. If the Court considers any ordinances, the later ordinance approving the $7.5 million settlement controls

The City relies on its general "debt ordinance," which directs the Comptroller to withhold payments owed by the City—including settlement payments—until purported debts are satisfied. Ex. 4. But that is not the only relevant ordinance. To authorize the $7.5 million settlement in this case, the City Council was required to—and did—pass a separate, specific ordinance approving

6

the settlement amount. Ex. 5. That ordinance expressly authorized the Corporation Counsel to settle this case for $7.5 million.

At the time the City enacted the settlement ordinance, the parties had already agreed to the written settlement agreement, which contains no provision authorizing setoff. The settlement ordinance likewise contains no reference to the earlier, more general debt ordinance. Instead, it expressly approves a $7.5 million payment—without qualification.

Under long-established principles of statutory construction, where two enactments cannot be harmonized, the later and more specific ordinance controls. *People ex rel. Schlaeger v. Mattes*, 396 Ill. 348, 352, 71 N.E.2d 690, 692 (Ill. 1947); *Campbell v. City of Chicago*, 119 F.2d 1014, 1017 (7th Cir. 1941). Accordingly, if the Court considers any municipal ordinances at all (and it need not, given the unambiguous settlement contract), the later settlement ordinance controls and requires payment of the full $7.5 million.

## CONCLUSION

There is absolutely no basis for the City to do anything other than pay the $7.5 million it agreed to pay. The City did not negotiate for a setoff and did not raise it at any point prior to unilaterally declaring—six months after the parties reached settlement—that it intended to withhold a portion of the settlement payment. The Court should enforce the parties' settlement agreement and direct the City to pay the full $7.5 million settlement payment it agreed to make.

Respectfully submitted,

/s/ Alyssa Martinez
*One of Plaintiff's Attorneys*

Jon Loevy
Steve Art
David B. Owens
Alyssa Martinez
Loevy & Loevy

7

311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 243-5900
alyssa@loevy.com